Foster & Creighton Company *v.* Edgar J. Graham, State Comptroller, *et al.**

(*Nashville.*   December Term, 1925.)

Opinion filed July 6, 1926.

1. **CONSTITUTIONAL LAW.  Acts 1923, chapter 58, as amended by Acts 1925, chapter 67, imposing tax on sale and storing gasoline.**

Said Acts of 1923, and 1925, amendatory, creating a privilege, not a property tax, are valid and do not conflict with provisions of the Constitution, article 2, section 28.   (Post, p. 415.)

Citing: Dawson v. Ky. Distilleries, 255 U. S. 288, 65 L. Ed. 638. Thompson v. McLeod, 112 Miss. 383, L. R. A. 1918C, 893; Ann. Cases, 1918A, 674.

2. **SAME.  Same.**

Nor do said Acts of 1923 and 1925 conflict with the provisions of the Constitution by creating a privilege tax on gasoline stored, and excluding other petroleum products.   (Post, p. 419.)

Citing: Const., art. 1, sec. 8; Art. 11, sec. 8.  Bowman v. Continental Oil Co., 256 U. S. 642; 65 L. Ed., 1139; Texas Co. v. Brown, 258, U. S. 466; 66 L. Ed., 721.

3. **TAXATION.   Direct or indirect.**

Excepting polls, all taxes are direct or indirect.   Direct when imposed with reference to value of property; indirect when imposed upon some right or privilege.   (Post, p. 420.)

Citing:  20 R. C. L., p. 35; 26 R. C. L., 209; Bank of Commerce & Trust Co. v. Senter, 149 Tenn., 569, 260 S. W., 144; Ogilvie v. Halley, 141 Tenn., 392, 210 S. W., 645; State ex rel. v. American Trust Co., 141 Tenn., 243, 208 S. W., 611.

4. **TAXATION.   Privileges.**

The legislature has unlimited and unrestricted power to tax privileges, and this power may be exercised in any manner or mode in its discretion.   (Post, p. 429.)

Citing: Wilson v. State, 143 Tenn., 72, 224 S. W., 168; Jenkins v. Ewin, 8 Heisk. (55 Tenn.), 473; Kelly v. Dwyer (75 Tenn.), 180; Shelton v. Silverfield, 104 Tenn., 71, 56 S. W., 1023; Am. Steel & Wire Co. v. Speed, 110 Tenn., 547, 75 S. W., 1037, 100 Am. St. Rep., 814; Trentham v. Moore, 111 Tenn., 352; 76 S. W., 961.

5. STATUTES. Enactment. Caption. One subject.

The general purpose of the provisions of article 2, section 17, of our Constitution is accomplished, when the law has but one general purpose, which is fairly indicated by its title. (Post, p. 429.)

Citing: Wilson v. State, supra; Cannon v. Mathes, 8 Heisk. (55 Tenn.), 519; R. R. v. Byrne, 119 Tenn., 278, 104 S. W., 460.

6. SAME. Same. Same. Same.

The one subject clause of the Constitution applies only to the body of the Act, and not to the caption, and it is no valid objection that the caption contains two subjects, and the body only one. (Post, p. 430.)

Citing: State ex rel. v. Hamby, 114 Tenn., 365, 84 S. W., 622; Knoxville v. Gass, 119 Tenn., 451, 104 S. W., 1084; Palmer v. Express Co., 129 Tenn., 156, 165 S. W., 236.

---

*Headnotes 1. Licenses, 37 C. J., section 78; 2. Taxatino, 37 Cyc., p. 714; 3. Taxation, 37 Cyc., p. 714; 4. Licenses, 37 C. J., sections 9, 61; 5. Licenses, 37 C. J., section 13; 6. Licenses, 37 C. J., sections 53, 59; 7. Statutes, 36 Cyc., p. 1044; 8. Statutes, 36 Cyc., p. 1022; 9. Statutes, 36 Cyc., p. 1022 (Anno.).

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Chancellor.

R. B. C. Howell, J. C. Edwards and W. E. Norvell, Jr., for appellant.

FRANK M. THOMPSON, Attorney-General, and WM. L. GRANBERY and CHAS. C. TRABUE, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by Foster & Creighton Company, a Tennessee corporation, with its principal office at Nashville, against Edgar J. Graham, State comptroller, and Frank S. Hall, commissioner of finance and taxation, both individually and in their official capacities, to recover two payments made by complainant, under protest, of gasoline tax, amounting to $510.45, which complainant had been compelled to pay the State under chapter 58 of the Public Acts of 1923, as amended by chapter 67 of the Public Acts of 1925, on two tank cars of gasoline, one car containing eight thousand ninety-five gallons and the other eight thousand thirty-six gallons.

The bill alleges that the complainant is engaged in the contracting business, erecting buildings, building roads, etc., and, while engaged in constructing a road in Maury county, Tenn., it purchased in interstate commerce, and had shipped to it, the two cars of gasoline in question, nor for sale, but to be used by it in the operation of its motor trucks used in the construction of said highway under a contract with the State.

The bill further alleged that complainant has never been a distributor or dealer in gasoline, nor engaged in the business of refining, manufacturing, producing, or compounding gasoline or selling it in this State, nor has it ever been engaged in the business of storing the same in this State for any other purpose than its own use; that, when the gasoline in question was received in the

tank cars above mentioned, it was placed in a tank in Maury county, to be used by complainant for its own purposes, and was so used as a necessary incident to the proper carrying on of its business as a road contractor, for the carrying on of which business it had paid a privilege tax to the State; that there was no filling station convenient to the work in which complainant was engaged in performing; and that said gasoline was purchased by complainant, and stored by it in its own tank, for convenience, and withdrawn as it was needed for use in its business.

The bill alleged that, under a proper construction of chapter 58 of the Public Acts of 1923, as amended by chapter 67 of the Public Acts of 1925, the act does not impose the three cent gasoline tax upon one who is not a dealer or distributor, but only stores gasoline in his own tank, and withdraws the same for his own use; but that, if said act, as amended, when properly construed, does apply in such case, then, to that extent, it contravenes article 1, section 8, article 11, section 8, article 2, section 17, and article 2, section 28, of the State Constitution, and is invalid.

That article 2, section 28, is violated because:

(a) A tax on the use or consumption of a particular commodity is a property tax, and all taxes on property must be uniform, and according to its value.

(b) That it is not a privilege tax, and is not included in the power delegated to the legislature by our Constitution to levy privilege taxes.

(c) That the selection of the use of gasoline alone for taxation, to the exclusion of all other petroleum products,

is unreasonable and arbitrary, and violates article 1, section 8, and article 11, section 8, of our Constitution.

(d) That the act, as amended, violates article 2, section 17, of our Constitution, because the caption is expressly limited to a tax on the business of selling, storing, or distributing gasoline, while the body of the act applies to those who may purchase and store gasoline, and thereafter withdraw it for their own use, and therefore contains a subject not expressed in the caption.

A demurrer was filed to the bill by the defendants, which was sustained by the chancellor, and the bill dismissed, from which decree complainant has appealed and assigned errors, raising substantially the questions above indicated.

The caption of chapter 58 of the Acts of 1923 reads as follows:

"An act requiring all persons, firms, associations, joint-stock companies, syndicates and corporations engaged in or carrying on the business in this State of selling gasoline and distillate in this State, to pay to the State comptroller a privilege tax, for engaging in and carrying on such business in this State, equal to two cents per gallon of such gasoline and distillate, to be in addition to all other taxes, such fund to be used solely in the construction and maintenance of a highway system in the State."

Section 1 of said act reads: "Be it enacted by the general assembly of the State of Tennessee, that as used in this act the term 'person' means and includes every individual, firm, association, joint-stock company, syndicate and corporation.

"The term 'distributor' means and includes every person who engages in the business in the State of refining, manufacturing, producing or compounding gasoline or distillate, and selling the same in this State; and also every person who engages in the business in this State of shipping, transporting or importing any gasoline or distillate into, and making original sales of the same, in this State.

"The term 'dealer' means and includes every person, other than a distributor, who engages in the business in this State, of distributing or selling gasoline or distillate within this State."

By subsequent sections a privilege tax of two cents a gallon was imposed on dealers "for each gallon of gasoline . . . sold or distributed by such dealer in this State." This tax, by the express terms of the act, was denominated "a special privilege tax in addition to all other taxes."

The tax was subsequently increased to three cents by chapter 4 of the Public Acts of 1925.

The caption of the amendatory act (chapter 67, Acts of 1925) reads as follows:

"An act to amend an act entitled: 'An act requiring all persons, firms, associations, joint-stock companies, syndicates and corporations engaged in or carrying on the business in this State of selling gasoline and distillate in this State, to pay to the State comptroller a privilege tax for engaging in and carrying on such business in this State, equal to two cents per gallon of such gasoline and distillate, to be in addition to all other taxes, such fund to be used solely in the construction and maintenance of a highway system in the State,' being chapter

154 Tenn.—27.

58 of the Public Acts of 1923, so as to amend the caption by including the words, 'or storing or distributing,' after the word 'selling' in the third line of the caption of the printed act as published, and by amending the body of the act by imposing the tax upon persons, firms, associations, joint-stock companies, syndicates and corporations storing or distributing any of the products mentioned in said act.''

Section 1 of this amendatory act reads:

''Be it enacted by the general assembly of the State of Tennessee, that the caption of chapter 58, of the Public Acts of 1923, being entitled 'An act requiring all persons, firms, associations, joint-stock companies, syndicates and corporations engaged in or carrying on the business in this State of selling gasoline and distillate in this State, to pay to the State comptroller a privilege tax for engaging in and carrying on such business in this State, equal to two cents per gallon of such gasoline and distillate, to be in addition to all other taxes, such fund to be used solely in the construction and maintenance of a highway system in the State,' be amended so as to add after the word 'selling' and before the word 'gasoline,' the words 'or storing or distributing.' ''

Section 2 reads: ''Be it further enacted, that section 3 thereof be amended by adding at the end thereof the following: 'The tax imposed by this act shall apply to persons, firms, or corporations, dealers or distributors, storing any of the products mentioned in this act, and distributing the same, or allowing the same to be withdrawn from storage, whether such withdrawal be for sale or other use; provided that ''sellers'' of gasoline and such substitutes thereof and distillates paying the

tax herein provided may continue to pay the same computed and paid on the basis of their sales as hereinbefore required and stores and distributors shall compute and pay this tax on the basis of their withdrawals or distributions.' "

It will be seen that the act of 1923 imposed a tax on "dealers," and measured it by the quantity of gasoline "sold or distributed" by them, and the term "dealer" was defined as one engaged in the business of "distributing or selling gasoline."

The act of 1925 extended the scope of the act of 1923 so as to include, not only those engaged in selling gasoline, but also those engaged in storing it, and then withdrawing it for sale or other use.

The original act expressly excluded from its operation gasoline while it was in interstate commerce (section 2). All other gasoline, when sold or distributed, was included in the calculation of the tax.

We think the effect of the amendatory act of 1925, when properly interpreted, is to reach gasoline that is stored and thereafter withdrawn and used without being sold by any person, etc.

Under the act of 1923, a large consumer of gasoline, desiring to escape the tax levied by the act, could do so by buying his gasoline in quantities, say in tank lots, storing it, thereafter withdrawing it, and using it as needed. In such case there would be no intrastate sale or distribution within the meaning of said act, and such consumer would not, therefore, be subject to the tax.

It was manifestly the purpose of the legislature in passing the amendatory act to cut off this avenue through which large consumers might evade the tax.

We think the act, when properly interpreted, not only applies to distributors and dealers in gasoline, but applies to consumers who purchase gasoline in interstate commerce and store it, and thereafter distribute the same, or allow the same to be withdrawn from storage, whether such withdrawal be for sale or other use. It therefore necessarily follows that complainant, and all other persons, etc., in like situations, come within the provisions of said act.

We now come to a consideration of the constitutional questions urged against the validity of the act. It is first said that this tax is not a privilege tax, but is a tax on property, because a tax levied upon the use of, or by reason of the ownership of, property, such as its withdrawal from storage, etc., is a tax upon the property itself, and therefore the act, as amended, violates article 2, section 28, of our Constitution.

All taxes, other than polls, are either direct or indirect. A direct tax is one that is imposed directly on property according to its value. It is generally spoken of as a property tax, or an *ad valorem* tax. An indirect tax is a tax upon some right or privilege, and it is also called an excise or occupation tax.

In 26 R. C. L., section 16, p. 35, it is said:

"The phraseology of the various Constitutions is not invariably the same, and different words are used in the different States to describe the two classes of taxes; but it is believed that there is no substantial difference in actual practice. An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the

legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but, if the tax is computed upon a valuation of property, and assessed by assessors either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax.''

In 26 R. C. L., section 209, p. 236, it is also said: ''Every form of tax not imposed directly upon polls or property must constitute an excise, if it is a valid tax of any description.''

Again, in the same section, it is said: ''On the other hand, the use of property of certain classes, especially luxuries, has always been considered a proper subject of excise. Thus a tax on the use of carriages was imposed in some of the colonies even prior to the Revolution, and a similar tax imposed by the United States in 1794 was sustained after much discussion as a valid excise. So also taxes on the use of billiard tables even by the owner for his own amusement have not been uncommon, and have been everywhere sustained. The license taxes on automobiles, from which almost every State derives a substantial revenue, are a modern example of the same sort of tax.''

In *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144, this court expressly held that the term ''excise tax'' was synonymous with the term ''privilege tax,'' and that the two are often used interchangeably. It was also held in that case that the term ''excise tax'' is never applied to direct taxation.

In *Ogilvie* v. *Hailey*, 141 Tenn., 392, 210 S. W., 645, this court upheld the validity of an act levying a privilege tax on automobiles used for pleasure. In that case, among other things, the court said:

"It is next insisted that the use of automobiles for pleasure cannot be declared a privilege, inasmuch as such use is not the pursuit of any business or occupation, and it is sought to limit a privilege to such pursuits.

"While some of our older cases apparently justify these arguments, later decisions of this court declare that the doing of a single act may be declared a privilege."

In *State ex rel.* v. *American Trust Co.*, 141 Tenn., 243, 208 S. W., 611, this court, in dealing with an act (chapter 70, Acts of 1917) imposing a tax on mortgages and deeds of trust to be levied "in lieu of all other taxes," held the act to be unconstitutional on other grounds, but made this observation:

"Treating the act in question as an attempt to impose a registration privilege tax, it doubtless might have been sustained if it had not undertaken to exempt mortgages and deeds of trust from taxation. This is not a privilege, as of carrying on a business or occupation, but a privilege of exercising a right, not a natural right, the right of registration."

Counsel for complainant undertake to differentiate these cases on the ground that they deal with rights that are not natural, and for this reason the taxes would lie. The argument is that the right to store gasoline in quantity is a natural right, but this argument is not sound.

If this argument were correct, upon the same principle one would have the right to store dynamite or gunpowder, though the storing of dynamite or gunpowder might

affect the health or safety of the public. The storing of these commodities is certainly not a natural right. Gasoline is likewise an intrinsically dangerous substance. It follows, therefore, that the State has the right to control the use of it as well as the sale of it. There cannot be any natural right to handle and use it without restraint. One method of regulation is by means of a privilege tax. One of the necessary effects of such tax is to remove the motive for storing it in quantity, because, if the tax of three cents a gallon cannot be saved, it is reasonable to assume that the consumer would buy it from the distributor as needed.

The validity of a tax on the use and consumption of gasoline has been recognized and sustained by the supreme court of the United States in the two recent cases of *Bowman* v. *Continental Oil Co.,* 256 U. S., 642, 41 S. Ct., 606, 65 L. Ed., 1139, and *Texas Co.* v. *Brown,* 258 U. S., 466, 42 S. Ct., 375, 66 L. Ed., 721.

In the first case the validity of a statute of New Mexico which imposed a tax of two cents a gallon on gasoline sold or used, was involved. The defendant was engaged in the business of selling gasoline in New Mexico, and also used gasoline in the operation of its own tank wagons.

The court held that the tax on the use was valid both under the State and Federal Constitutions, saying:

"With the excise tax as imposed upon the use of gasoline by plaintiff at its distributing stations, in the operation of its automobile tank wagons and otherwise, we have no difficulty. Manifestly, gasoline thus used has passed beyond interstate commerce, and the tax can be imposed upon its use, as well as upon the sale of the same

commodity, in domestic trade, without infringing plaintiff's commercial rights under the Federal Constitution."

And as to the State Constitution the court said: "Section 1, article 8, of the State Constitution, invoked by plaintiff, reads: 'Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class.' Clearly, the first part of this refers to property taxation. The tax imposed by the act under consideration upon the 'sale or use of all gasoline sold or used in this State' is not property taxation, but in effect, as in name, an excise tax. We see no reason to doubt the power of the State to select this commodity, as distinguished from others, in order to impose an excise tax upon its sale and use; and since the tax operates impartially upon all, and with territorial uniformity throughout the State, we deem it 'equal and uniform upon subjects of taxation of the same class,' within the meaning of section 1 of article 8."

In *Texas Co.* v. *Brown,* supra, the court, in passing upon the validity of a statute passed by the legislature of the State of Georgia levying a tax on the use of gasoline, said:

"Apparently, it was intended to cover the case of large consumers who otherwise might find it advantageous to bring in, and store until needed, quantities of oil or gasoline sufficient for their own consumption, thus escaping dealer's profit and inspection tax as well. We find in its provisions nothing to raise a question about the validity of the system."

In that case it was urged that the tax violated the following provision of the Georgia Constitution (Civ. Code Ga. 1910, section 6553):

"All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

But the court overruled this contention, saying: "We are unable to see in article 7, section 2, paragraph 1, of the State Constitution, anything to prevent the application of these statutes to plaintiff's business. The requirement of uniform valuation upon all property subject to be taxed, manifestly refers to property taxes imposed by reason of ownership, which this is not. The clauses requiring that all taxation shall be uniform upon the same class of subjects, and levied and collected under general laws, are not violated by the tax in question. Classification is in terms permitted, and a law based on reasonable classification must be deemed a general law, in the sense of the Constitution."

So it will be seen that the United States supreme court held that such a tax was not a property tax, but was an excise tax; but counsel for complainant in the instant cause say that the New Mexico Constitution had no provision like article 2, section 28, of our Constitution, relating to property taxes, but had a provision similar to that in the Constitution of the State of Georgia, and that the supreme court quoted from said Constitution, and denominated said tax, not as a privilege tax, but as an excise tax.

This argument is unsound. If a tax on the use or consumption of gasoline is intrinsically an excise tax, as held by the United States supreme court, then it is an excise tax everywhere. The Constitution of the State does not

affect at all the generic quality of the tax, but merely the right of the State to impose it.

The two cases relied on by counsel for complainant as supporting their contention that the tax in question is a property tax are *Dawson* v. *Kentucky Distilleries,* 255 U. S., 288, 41 S. Ct., 272, 65 L. Ed., 638, and *Thompson* v. *McLeod,* 112 Miss., 383, 73 So., 193, L. R. A., 1918C, 893, Ann. Cas., 1918A, 674.

The taxes involved in those two cases were held to be property or direct taxes, and not indirect taxes.

In the Dawson case the tax was on whisky when permanently removed from a bonded warehouse, or when transferred from a bonded warehouse in the State to a bonded warehouse outside of it, and the court held that the tax was intended to reach the whisky itself, and was, therefore, a direct tax, and impliedly recognized the different character of such a tax here under consideration, saying:

"Likewise the tax is not one imposed upon the business of owning, storing and removing whisky from bond."

From this language we think the inference may be reasonably drawn that, if it had been, it would have been sustained as an excise or privilege tax.

In *Thompson* v. *McLeod,* supra, the court was dealing with an act of the legislature which levied what it called an annual privilege tax, or occupation fee, upon all persons pursuing the business of extracting turpentine from standing trees, prescribing said tax as one-fourth of one cent each year for each cup or box. The court held that this was an *ad valorem* or property tax, and violated the Mississippi Constitution, which corresponds to article 2, section 28, of our Constitution; the court saying:

"'The imposition of such a tax is not on a business, but on the property involved. Here we have a citizen of our State who owns and operates his own turpentine distilleries, who owns the pine trees which produce the resin, the crude product, without which his distilleries cannot be operated, and although he pays *ad valorem* taxes upon his land and standing trees at their true value, and although he pays a privilege tax for the right to manufacture spirits of turpentine from the annual product of the trees, he is now called upon to pay an additional tax of one-fourth of one cent on each box cut or chopped on the trees, and it requires no refinement to observe at once that this is an additional burden of taxation operating, not indirectly, but directly upon complainant's property. Here the legislature attempts to say to the citizen:

"'Although we recognize that you are the lawful lessee or owner of standing pine trees which produce when tapped an annual product of resin, and although we have demanded and you have paid your full share of taxes upon these standing pine trees and the soil which continually feeds them, nevertheless, thou shalt not lay ax to the tree to extract the natural gum without subjecting any property which you have in the State of Mississippi to an additional tax of one-fourth of a cent for each box you cut.'

"This act strikes down the inherent right of the property owner to lay hand upon his own property. Every owner of a pine tree enjoys the same natural right to extract gum from the tree as the owner of a vineyard has to pluck his own grapes. It would be the same thing to require a privilege tax as a precedent right of the owner

to pull the ripe pecans from his pecan orchard or to enjoy a drink of pure water from the cool spring of the old homestead. As stated, the levy is not imposed for the right to sell crude turpentine. If this were done, then anyone engaged in the regular business of buying and selling crude gum might be liable. The writer is not disposed to commit this court to any unnecessary process of reasoning in this opinion, but having been born and reared amongst the tall, long-leaf pines of South Mississippi, is familiar therefore with the turpentine business and feels safe in asserting that there is no well-defined business of buying and selling the crude turpentine. It is true that many individuals tap their own trees, and sell the annual crude product to the distilleries. It is also true that the owner of the turpentine distillery, more familiarly known as the 'still,' frequently leases standing timber for the express purpose of boxing the trees for turpentine. In doing so, however, he is the owner either of the timber or of a valuable lease, generally referred to as a turpentine lease. It has been expressly decided by this court that a turpentine lease is a thing of value— 'property,' upon the value of which the State can levy and does levy an *ad valorem* tax.''

The tax in that case was held by a majority of the court to be a property tax, Justices POTTER and COOK dissenting, being of the opinion that the tax was levied on the occupation or business of extracting crude turpentine from the tree, that the statute said so in plain English, and we may say that we are impressed with the logic of the dissenting opinion, and will not be controlled by the opinion of the majority in determining whether

the tax under consideration is a property tax or a privilege tax. We think it is the latter, and so hold.

It is insisted by counsel for complainant that the effect of imposing this tax on it would' be to subject it to a double privilege tax.

The legislature has unlimited and unrestricted power to tax privileges, and this power may be exercised in any manner or mode in its discretion. *Wilson* v. *State,* 143 Tenn., 72, 224 S. W., 168; *Jenkins* v. *Ewin,* 8 Heisk., 473; *Friedman Bros.* v. *Mathes,* 8 Heisk., 488; *Kelly* v. *Dwyer,* 7 Lea, 180; *Shelton* v. *Silverfield,* 104 Tenn., 71, 56 S. W., 1023; *American Steel & Wire Co.* v. *Speed,* 110 Tenn., 547, 75 S. W., 1037, 100 Am. St. Rep., 814; *Trentham* v. *Moore,* 110 Tenn., 352, 76 S. W., 904.

The act does not violate article 1, section 8, and article 11, section 8, of our Constitution, for the reasons hereinbefore stated. Nor does it violate article 2, section 17. The general purpose of the provisions of article 2, section 17, of our Constitution, is accomplished when the law has but one general purpose, which is fairly indicated by its title. *Wilson* v. *State,* supra; *Cannon* v. *Mathes,* 8 Heisk., 519; *Railroad* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460.

The original act covered the selling of gasoline, and in that sense it was restricted. It was, therefore, necessary, in the caption of the amendatory act, to enlarge the scope of the original act so as to cover gasoline that was used and not sold.

The title of the amendatory act under consideration here may be divided, for convenience, into three parts, viz:

(a) "An act to amend an act entitled 'An act . .· .' being chapter 58 of the Public Acts of 1923; . . ."

(b) "So as to amend the caption by including the words 'or storing or distributing,' after the word 'selling' in the third line of the caption of the printed act as published;" and

(c) "By amending the body of the act by imposing the tax upon persons, firms, associations, joint-stock companies, syndicates and corporations storing or distributing any of the products mentioned in said act."

Counsel for complainant base their whole contention that the act violates article 2, section 17, of our Constitution on part (b) of the caption, and say that, therefore, the amendment reaches only those who are engaged in carrying on the business of storing and distributing gasoline. They ignore part (c) of the caption, above quoted, which is just as much a part of the caption as part (b). If there is any ambiguity in the meaning of part (b), it is fully cleared up by part (c). The most that could be said would be that the title covers both cases, those who store (part c), and those engaged in the business of storing (part b), and that the former case (those who store) is included in the body of the act, while the latter (those engaged in the business of storing) is not. This, however, would not invalidate the act. The one subject clause of the Constitution applies only to the body of the act, and not to the caption, and there is no objection that the caption contains two subjects and the body only one. *State ex rel.* v. *Hamby,* 114 Tenn., 365, 84 S. W., 622; *Knoxville* v. *Gass,* 119 Tenn., 451, 104 S. W., 1084; *Palmer* v. *Express Co.,* 129 Tenn., 156, 165 S. W., 236.

The only subject contained in the body of the amendatory act here under consideration is embraced in part (c) "by amending the body of the act by imposing the tax upon persons, firms, corporations, dealers or distributors, storing or distributing any of the products mentioned in this act, or allowing the same to be withdrawn from storage, whether such withdrawal be for sale or other use."

It was said in *Railroad* v. *Byrne,* supra:

"The familiar canon of construction that, where the constitutionality of a statute is called in question, every intendment and presumption is in its favor, and every doubt must be solved so as to sustain it, and, where it is subject to two constructions, that which will sustain its constitutionality must be adopted, is applicable in the interpretation of titles. *Cole Manufacturing Co.* v. *Falls,* 90 Tenn., 466, 16 S. W., 1045; *State ex rel.* v. *Schlitz Brewing Co.,* 104 Tenn., 718, 59 S. W., 1033, 78 Am. St. Rep., 941."

It results that we find no error in the decree of the chancellor, and it will be affirmed with costs.