13116

GREGG DYEING COMPANY v. QUERY *ET AL.*, TAX
COMMISSION

(164 S. E., 588)

*Messrs. Haynesworth & Haynesworth, Bomar & Osborne, L. W. Perrin* and *Henderson & Salley,* for plaintiff's petitioners,

*Messrs. J. M. Daniel, Attorney General,* and *J. Fraser Lyon,* for defendant,

April 13, 1931.

The opinion of the Court was delivered by MR. JOHN I. COSGROVE, ACTING ASSOCIATE JUSTICE.

In the original jurisdiction of the Court, petitioner has brought this action seeking to enjoin respondents as members of the South Carolina Tax Commission from the enforcement as to it, and others in like plight, of the provisions of a statute which it denominates as the "Gasoline Tax Act of 1930."

The Act in question, approved April 4, 1930 (36 St. at Large, 1390), is entitled: "An Act to Impose a License Tax on Gasoline, Substitutes Therefor, or Combinations Thereof, Kept, Stored or Used in the State of South Carolina, Which Have Not Been Subjected to the Payment of a License Tax Under Any Other Statute of the State of South Carolina, and Providing for the Collection and Distribution of Such Tax."

Section 1 provides: "Every person, firm, corporation, municipality, County, or any subdivision thereof, in the State of South Carolina which shall import into this State from any other state or foreign country, or shall receive by any means into this State, and keep in storage in this State for a period of twenty-four hours or more, after the same shall have lost its interstate character as a shipment in interstate commerce, any gasoline or any other like products of petroleum or under whatever name designated, which is intended to be stored or used for consumption in this State, shall pay a license tax of six cents per gallon for every gallon of gasoline, or other like products of petroleum aforementioned, which shall have been shipped or imported into this State from any other state or foreign country, and which shall hereafter, for a period of twenty-four hours after it loses its interstate character as a shipment of interstate commerce be kept in storage in this State to be used and consumed in this State by any person, firm, or corporation, * * * and which has not already been subjected to the payment of the license taxes imposed upon the sale thereof by Acts of the General Assembly of the State of South Carolina," designating particularly the Acts of 1925

and 1929 imposing license taxes for the privilege of dealing in gasoline or like products of petroleum, as therein defined.

Section 6 provides: "Nothing within this Act shall be construed to impose a license tax upon any selling agent, consumer, or retailer, selling, consigning, shipping, distributing or using gasoline, combinations thereof, or substitutes therefor, which may have been bought from any oil company on which the license taxes imposed by Act No. 34, Acts of the General Assembly of 1925, approved the 23rd of March, 1925, and Act No. 102, Acts of the General Assembly of 1929, approved the 16th day of March, 1929, have been paid nor shall this Act be construed as applying in the case of interstate commerce."

In substance, petitioner alleges that it conducts a bleachery in Aiken County, S. C., and in the process of its work and manufacture uses much gasoline; that at present and for a number of years heretofore it has been its practice to buy its gasoline in bulk from persons residing or doing business without the State of South Carolina; that such gasoline is purchased outright at the place of business of the out-of-state dealer, and the product so purchased is shipped in interstate commerce to its plant, where, upon arrival, it is unloaded and stored and kept in storage in its own tanks for more than twenty-four hours, until needed for use in its manufacturing processes and for its own purposes alone; that though there is at Charleston, S. C., a refinery conducted by the Standard Oil Company, at which large quantities of gasoline are produced, it has not in the past or present purchased such gasoline, but "has found it advisable" to purchase its gasoline from dealers beyond the State of South Carolina in the manner above outlined. That this practice is followed not alone by petitioner but also by other large users of gasoline in South Carolina in like plight. That it is its intention to continue the purchase of gasoline for its own use in its manufacturing processes as above stated, its

annual purchases in bulk from without the State of South Carolina being estimated at approximately 35,000 gallons.

This Court is asked to declare the Act of 1930 inapplicable to plaintiff and others in like plight upon the facts alleged; and that, if found applicable, the same be declared unconstitutional under both the State and Federal Constitutions in the particulars set forth.

To the petition herein the Attorney General, on behalf of respondents, filed a general demurrer to the effect that "no part of said Act violates the clauses of the Constitution of the United States, nor of the State of South Carolina, as alleged in the Complaint."

The following questions are presented:

First. Under the Federal Constitution—

(a) The Act burdens interstate commerce.

(b) The Act discriminates against gasoline produced in other States.

(c) The Act taxes two things: (1) Interstate importation, (2) storage within the State; that these two essentials are inseparable for the purposes of the tax and hence act discriminatory and burden on interstate commerce.

Second. Under the State Constitution—

(a) The tax is a property tax repugnant to Section 1, Article 10, of the Constitution.

(b) The tax is not an excise tax, but is a license tax within the constitutional definition, applying only to "occupations and businesses," and as to petitioner contravenes this constitutional provision.

The Act in question may be said to be complementary to the other statutes of South Carolina under which are assessed a gallonage tax on gasoline and other petroleum products. Indeed, it expressly excludes from its provisions all gasoline upon which a like tax has been paid under other statutes. It so declares in its title and specifically designates in its body the statutes, payment of the tax under which exempts from its burden.

It is a settled rule of statutory construction that it is the duty of the Court to ascertain the intent of the Legislature and to give it effect so far as possible within constitutional limitations. When a statute is a part of other legislation, designed as a whole to establish an expressed State policy, the Court should strive to effectuate that policy. To aid in its construction, the statute must be read in the light of cognate legislation. *Tallevast v. Kaminski,* 146 S. C., 225, 143 S. E., 796. And, in construing statutes on the same subject, "they shall be taken together, and construed *in pari materia;* even though there be no express reference by the latter statute to the former." *State v. Fields,* 2 Bailey, 554, 25 R. C. L., 1060. See, also, *Columbia Gaslight Co. v. Mobley,* 139 S. C., 113, 137 S. E., 211.

"The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes that are contemporaneous." 25 R. C. L., 1062.

This Court has said: "There is no rule better supported by justice and wisdom than that, when there are several Acts on the same subject, they should be read together as *one Act,* so far as their provisions are consistent; as by this means, the mischief, the remedy, and the intention, of the legislature, are more distinctly seen and applied." (Italics ours.) *Richards v. McDaniel,* 2 Mill Const. 18.

While, as a general rule, reference to statutes *in pari materia* for purposes of construction has been made largely where there is *ambiguity* in the language of the statute construed, yet this principle has not been limited solely to such instances.

"Statutes *in pari materia* must be construed together and given a construction, if possible, which violates no constitutional provision" (Syllabus). *Neil v. Independent Realty Co.,* 317 Mo., 1235, 298 S. W., 363, 70 A. L. R., 550.

Again: "These two Acts are cognate parts of a single purpose—the liquidation and retirement of designated road and bridge bonds—in the accomplishment of which pur-

pose the provisions of the two Acts are inextricably inter-related. They should therefore be construed *in pari materia* as one enactment." (Italics ours.) *Amos v. Mathews,* 99 Fla., 1, 126 So., 308, 313.

In South Carolina, commencing about a decade ago, the General Assembly expressed its public policy as to revenue to be derived from the use of gasoline. 32 St. at Large, 835. The tax then imposed was 2 cents a gallon. In 1925 (34 St. at Large, 51), the tax was increased to 5 cents, and in 1929, to 6 cents on the gallon. These statutes, however, only reached "dealers" in this commodity.

They provided: "That every oil company, person, firm or corporation doing domestic or intrastate business within this State, and engaging in the business of selling, consigning, using, shipping, or distributing for the purpose of sale within this State, any gasoline or any substitute therefor, or combination thereof, for the privilege of carrying on such business, shall be subject to the payment of a license tax, which tax shall be measured by and graduated in accordance with the volume of sales of such oil company within the State. Every such oil company shall pay to the State an amount of money equal to six (6) cents per gallon on all gasoline, combinations thereof, or substitutes therefor, sold or consigned, used, shipped or distributed for the purpose of sale within the State." Acts 1929, 107.

Statutes of this nature have been uniformly construed as imposing a tax on the ultimate consumer or user, as will be hereafter shown.

Realizing that large users of gasoline either were evading or would evade the payment of the tax imposed under these Acts, by bringing in gasoline in quantities from without the State, and storing it for their own purposes, the Legislature in 1930 enacted the statute under consideration, applying the 6-cents tax to every person, firm, corporation, municipality, or any subdivision subject to its terms. The mischief and evil aimed at are apparent.

Thus, with the Act of 1930. complementing the other statutes referred to, all consumers of gasoline in South Carolina pay a tax of 6 cents per gallon, no matter what the origin of, or state in which, the gasoline is produced.

Petitioner frankly states that it is to its advantage to buy its gasoline in other states than South Carolina, and to use, consume and enjoy the same to its profit without paying to the State of South Carolina the tax required of all others.

It attempts to defend its position on the ground that the Act of 1930 is unconstitutional, null, and void and asks this Court so to declare.

At the outset there are certain cardinal principles to be observed.

A Court will not declare an Act of the Legislature unconstitutional unless the same appears beyond a reasonable doubt.

"To doubt the constitutionality of a law is to resolve the doubt in favor of its validity." 6 R. C. L., 76.

In determining its constitutionality, "every presumption is to be indulged in favor of the validity of the statute." *Graves v. Minnesota*, 272 U. S., 425, 47 S. Ct., 122, 123, 71 L. Ed., 331.

Under settled practice, a preference is always given to the construction of a statute upholding its constitutionality where it is fairly susceptible of two constructions. *Missouri Pac. R. Co. v. Boone*, 270 U. S., 466, 46 S. Ct., 341, 70 L. Ed., 688.

On more than one occasion this Court has said: "It is a grave matter to declare a solemn enactment of the Legislature,.a co-ordinate branch of the government, invalid, and that the Court in its deliberation and conclusions should be guided by the well-settled principle that the unconstitutionality of an Act must be shown beyond a reasonable doubt." *Wingfield v. South Carolina Tax Commission*, 147 S. C., 122, 144 S. E., 846, 848, and cases cited. *Santee Mills v. Query*, 122 S. C., 162, 115 S. E., 202.

In the light of these principles and the history of this legislation, we shall now consider the objections to the Act raised by petitioner.

In our research we have found two cases from the appellate Courts of sister states, in which statutes of like import were considered and upheld, against objections in every way the same as those here presented. *Sheip & Co. v. Amos*, 100 Fla., 863, 130 So., 699, 702; *Foster & Creighton Co. v. Graham*, 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971. The South Carolina Act, we were told in the argument before us, is substantially a' duplicate of the Florida statute upheld in the *Sheip case*.

We might be content, therefore, to rest our decision on these authorities and sustain this Act, with nothing more. We think, however, that the importance of the questions presented and the asserted difference of our State constitutional provisions warrant a full and fair consideration and determination of the issues.

## THE FEDERAL QUESTIONS

1. Does this statute burden interstate commerce within the meaning of the Federal decisions?

Under the facts alleged, petitioner purchases at a point without the State of South Carolina its gasoline in tank car lots on some occasions and on others in large drums. At any rate, the gasoline is delivered at its plant in Aiken County in these "original packages," and upon delivery it is transferred from the "original packages" to its own tanks and stored for future use.

On its face, the Act expressly negatives an intention to tax interstate commerce. It does not purpose to tax any gasoline until twenty-four hours after it has lost its interstate character. It seeks to operate only after the commodity has been severed from its interstate character and has become at rest as a part of the general mass of property in this State

subject to the protection of its laws. Its immunity from State taxation is then at an end.

"The beginning and the ending of the transit which constitutes interstate commerce are easy to mark. The first is defined in *Coe v. Errol,* 116 U. S., 517, 29 L. Ed., 715, 6 S. Ct., 475, to be the point of time that an article is committed to a carrier for transportation to the state of its destination, or started on its ultimate passage. The latter is defined to be, in *Brown v. Houston,* 114 U. S., 622, 29 L. Ed., 257, 5 S. Ct., 1091, the point of time at which it arrives at its destination." *General Oil Co. v. Crain,* 209 U. S., 229, 28 S. Ct., 475, 481, 52 L. Ed., 754; *Atlantic Coast Line R. Co. v. Standard Oil Co.* (C. C. A.), 12 F. (2d), 541, 60 A. L. R., 1456.

In support of its contention that the tax question, nevertheless, is a burden on interstate commerce under its practice as above outlined, petitioner cites *Standard Oil Co. v. Graves,* 249 U. S., 389, 39 S. Ct., 320, 63 L. Ed., 662; *Askren v. Continental Oil Co.,* 252 U. S., 444, 40 S. Ct., 355, 64 L. Ed., 654; *Bowman v. Continental Oil Co.,* 256 U. S., 646, 41 S. Ct., 606, 65 L. Ed., 1139; *Texas Co. v. Brown,* 258 U. S., 470, 42 S. Ct., 375, 379, 66 L. Ed., 721; *Sonneborn Bros. v. Cureton* (Keeling), 262 U. S., 513, 43 S. Ct., 643, 67 L. Ed., 1095; *Hart Refineries v. Harmon,* 278 U. S., 499, 49 S. Ct., 188, 73 L. Ed., 475.

It would serve no useful purpose to review these decisions individually. With the exception of the last, a later case, they were all reviewed and considered by the United States Supreme Court, in *Sonneborn Bros. v. Cureton, supra,* in an elaborate opinion by its late distinguished Chief Justice Taft. Speaking for the Court, he said:

"The question we have to decide is whether oil transported by appellants from New York or elsewhere outside of Texas to their warerooms or warehouse in Texas, there held for sales in Texas in original packages of transportation, and subsequently sold and delivered in Texas in such

original packages, may be made the basis of an occupation tax upon appellants, when the state tax applies to all wholesale dealers in oil engaged in making sales and delivery in Texas.

"Our conclusion must depend on the answer to the question: Is this a regulation of, or a burden upon, interstate commerce? We think it is neither. The oil had come to a state of rest in the warehouse of the appellants, and had become a part of their stock, with which they proposed to do business as wholesale dealers in the state. *The interstate transportation was at an end,* and, whether in the original packages or not, a State tax upon the oil as property or upon its sale in the state, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject." (Italics ours.)

As to the holdings and language of the cases above cited by petitioner which would indicate that a tax on gasoline brought into a state and sold in original packages of interstate commerce would be a burden on that commerce, the Court said: "Upon full consideration and after a reargument, we can not think this extension of the exemption referred to, if intended to apply to oil sold after arrival in the state, to be justified either in reason or in previous authority, and to this extent the opinions in the cases cited are qualified."

It follows, therefore, that if a state may tax the sale of such products free from the inhibition of the commerce clause of the Federal Constitution, a tax upon the storage for use and consumption of like products upon their coming to rest in the state is valid.

The case of *Texas Co. v. Brown, supra,* likewise supports this view. In construing the legality of a tax for inspection purposes under a Georgia statute, the Supreme Court said: "Aside from this, the authority of defendants to tax the products *or their storage* or sale commences when they have

come to rest; ordinarily when transferred from the tank car to the storage tank and added to plaintiff's stock in trade kept therein for local distribution and sale." (Italics ours.)

In *Hart Refineries v. Harmon, supra,* decided in 1928, the extent of the Sonneborn decision was construed. After reiterating its conclusions above set forth, the Court said: "But there is nothing in the opinion to suggest that the taxing power of the state is limited to the two kinds of taxes mentioned. Interstate transportation having ended, the taxing power of the state in respect of the commodity which was the subject of such transportation, may, so far as the commerce clause of the Federal Constitution * * * is concerned, be exerted in any way which the state's Constitution and laws permit, provided, of course, it does not discriminate against the commodity because of its origin in another state. That under such circumstances a tax may be imposed upon *the use* as well as upon the sale of the commodity in domestic trade, without coming into conflict with the commerce clause, was specifically determined in *Bowman v. Continental Oil Co.,* 256 U. S., 642, 648, 65 L. Ed., 1139, 1145, 41 S. Ct., 606." (Italics ours.)

See, also, *Wright v. Fulton County,* 169 Ga., 354, 150 S. E., 262; *Sheip & Co. v. Amos, supra; Foster & Creighton Co. v. Graham, supra.*

Our conclusion, therefore, is that there is nothing in the Act itself or in the manner of its enforcement to give countenance to the assertion that it regulates or burdens interstate commerce.

But, says petitioner, conceding these decisions to apply, the Act still is unconstitutional because all gasoline stored in South Carolina is not subject to the tax and hence the Act discriminates against the commodity because of its origin in another state. This brings us to petitioner's remaining objections under the Federal law, II and III. The Act is assailed under these heads because: (1) It discriminates, it is asserted, against the products of other

states because of their origin; and (2) in that, it is argued, it taxes both interstate transportation and storage within the state, and as such is discriminatory under the equal protection clause of the Constitution, and, in addition, in the respect set forth, burdens interstate commerce. For the sake of brevity we shall discuss these objections together.

It is a settled principle of Federal law that a state cannot, consistently with the Federal Constitution, impose upon the products of other states, brought therein, for sale or use, more onerous public burdens or taxes than it imposes on like products of its own territory. *Guy v. Baltimore*, 100 U. S., 439, 25 L. Ed., 743; *Webber v. Virginia*, 103 U. S., 350, 26 L. Ed., 565; *Darnell & Son Co. v. Memphis*, 208 U. S., 113, 28 S. Ct., 247, 52 L. Ed., 413; *Cheney Bros. v. Massachusetts*, 246 U. S., 147, 38 S. Ct., 295, 62 L. Ed., 632; *Bethlehem Motors Corp. v. Flynt*, 256 U. S., 421, 41 S. Ct., 571, 65 L. Ed., 1029; *Sonneborn Bros. v. Cureton (Keeling)*, *supra*.

However: "The power of the State to classify for purposes of taxation is of wide range and flexibility, provided that the classification rest upon a substantial difference, so that all persons similarly circumstanced will be treated alike. Statutes which tax one class of property while exempting another class necessarily result in imposing a greater burden upon the property taxed than would be the case if the omitted property were included. But such statutes do not create an inequality in the constitutional sense. Nor is the imposition of an excise tax upon one occupation or one activity from which other and different occupations or activities are exempt, a denial of equal protection. It is enough if all in the same class are included and treated alike." *Hart Refineries v. Harmon, supra.*

The tax here imposed is an excise tax and not a property tax. *Bowman v. Continental Oil Co.*, 256 U. S., 642, 41 S. Ct., 606, 65 L. Ed., 1139.

Constitutional requirements, both state and Federal, as to equality and uniformity, are in strictness applicable only to *ad valorem* taxes on property and not to excises. It is sufficient if the excise imposed has a reasonable basis of classification, all in the same class are included and treated alike, be geographically uniform, and does not unreasonably burden interstate commerce.

The public policy of the State of South Carolina, as expressed in this legislation, taking it as a whole, is that all consumers shall pay the gallonage tax of 6 cents. Under the cognate Acts of 1925 and 1929, while the tax is directly imposed upon the seller, the burden actually rests upon the ultimate consumer.

"That the Legislature intended the effect of the tax to fall upon the ultimate consumer is evident, not only from the obviously inevitable result of requiring its payment, ordinarily, by the first domestic seller, but * * * [the tax applies, we interpolate] 'likewise to all such commodities that may be sold elsewhere and brought into the state of Georgia, for consumption or use.'" *Texas Company v. Brown, supra; Panhandle Oil Co. v. Mississippi,* 277 U. S., 218, 48 S. Ct., 451, 72 L. Ed., 857, 56 A. L. R., 583.

See, also, *Shanks v. Kentucky Ind. Oil Co.,* 225 Ky., 303, 8 S. W. (2d), 383, 385.

By the Act under consideration, the Legislature proposed to extend the consumption tax on gasoline in South Carolina. It taxes all gasoline stored for use and consumption upon which a like tax has not been paid under other statutes. By the kindred Acts all users are taxed. All oil companies in South Carolina, including the Standard Oil Company in Charleston, S. C., are required to pay and do pay the tax upon any gasoline they sell and all that they use in South Carolina, whether it be for operating their trucks upon the highways or otherwise. 34 St. at Large, 197.

The Act of 1930 puts gasoline, imported in interstate commerce and thereafter stored to be used and consumed

in South Carolina on the same basis, as to taxation, as domestic gasoline, that is, gasoline produced in this State and used and consumed in this State.

"Apparently," said the Supreme Court of the United States in *Texas Co. v. Brown, supra,* "it was intended to cover the case of large consumers who otherwise might find it advantageous to bring in, and store until needed, quantities of oil or gasoline sufficient for their own consumption, thus escaping dealer's profit and inspection tax as well. We find in its provisions nothing to raise a question about the validity of the system."

The tax applies only to persons who store with intent to use and consume the gasoline in South Carolina. The class sought to be reached by the tax is clear. The tax is single upon the use and consumption in South Carolina of gasoline, whether imported or not. Mere storage after manufacture or production is not enough to provoke the application of the tax. The only kind of storage affected is that with intent to use and consume the product in South Carolina. Such intention on its part petitioner admits to exist in the instant case, and in all future transactions. The fact that the Standard Oil Company at Charleston, S. C., manufactures and produces large quantities of gasoline which is stored at its refinery, and which is untaxed before its sale or use in South Carolina, does not, to our mind, work a discrimination against petitioner or producers in other states. It is admitted that that company, like all others, is required to pay and does pay a tax of 6 cents on all of its product sold in South Carolina or used and consumed in its business. The equality and uniformity of the tax is apparent.

That a tax-free period of twenty-four hours on all gasoline brought into the State by petitioner and others in like plight is allowed by the Act cannot, we think, be a ground of complaint on the part of petitioner.

Taking, then, these gasoline tax Acts as a whole and construing them as one enactment, as we must in order to

ascertain the intention of the Legislature and to give full force and effect to the expressed public policy of the State to lay a gallonage tax on all gasoline sold, used, and consumed in South Carolina, regardless of origin, it is our opinion that these objections to the Act of 1930 under the Federal Constitution cannot be sustained.

But, aside from these considerations, the tax is valid as a reasonable and lawful exercise of the police power of the State in the protection of the welfare and safety of its citizens.

"While passed primarily for revenue purposes, and to forestall evasion of the sales tax (see *Texas Co. v. Brown,* 258 U. S., 466, 481, 42 S. Ct., 375, 66 L. Ed., 721, 728), the statute is also regulatory in effect. The storage of gasoline in large quantities is inimical to public safety. If no financial advantage can be gained from storing it, one of the most substantial inducements to store it is removed. That result is accomplished by imposing a storage tax equivalent to the sales tax, thus tending to curb the practice of storing. See *Foster & Creighton Co. v. Graham,* 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971." *Sheip & Co. v. Amos, supra.*

See, also, *Shealy v. So. R. Co.,* 127 S. C., 15, 120 S. E., 561; *Bowman v. Continental Oil Co., supra; Texas Co. v. Brown, supra.*

## THE STATE QUESTIONS

1. Is the tax a property tax and hence repugnant to Section 1, Article 10, of the Constitution of South Carolina?

This section of the Constitution provides that "the General Assembly shall provide by law for a uniform and equal rate of taxation," etc.

If the tax is a property tax, this section applies; if an excise, it is inapplicable.

A tax of like character has been determined to be an excise tax and not a property tax. *Bowman v. Continental Oil*

*Co., supra; O'Berry v. Mecklenburg County,* 198 N. C., 357, 151 S. E., 880, 67 A. L. R., 1304.

"An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed strictly by the Legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the payer irrespective of the value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed on the valuation of property, and assessed by assessors either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax." 26 R. C. L., 35.

In a very recent case, the Supreme Court of the United States used this language: "While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, *Pollock v. Farmers' Loan & T. Co.,* 157 U. S., 429, 15 S. Ct., 673, 39 L. Ed., 759. * * *. this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise." *Bromley v. McCaughn,* 280 U. S., 124, 50 S. Ct., 46, 47, 74 L. Ed., 226.

The tax under the Act of 1930 is, of course, not assessed against the value of the gasoline stored, used, or consumed, for regardless of its market price, the tax remains the same.

Petitioner in support of its claim under this head relies solely on the case of *Dawson v. Kentucky Distilleries & Warehouse Co.,* 255 U. S., 288, 41 S. Ct., 272, 65 L. Ed., 638. This decision is fully analyzed and considered in the *Sheip* and *Foster & Creighton Co.* cases, *supra.* In each of these cases petitioners attacked like statutes on the ground that the taxes assessed under them were property taxes. The contention was overruled. It would serve only to lengthen

this already growing opinion to go over the same ground. We are satisfied with the conclusions reached on this point by those eminent tribunals.

II. Akin to the foregoing objection of petitioner to the Act under the State Constitution is its remaining ground that the tax is a license tax upon the mere storing of one's property, whereas the Constitution allows license taxes only on "occupations and businesses."

As shown above, the tax herein considered is an excise tax. It is not a license tax on an occupation or business. 17 R. C. L., 474 *et seq.*

The origin of excise taxes we have had neither the time nor opportunity to explore. It is certain that in the days of Blackstone, they were not only well established but much complained of. An excise on tea gave birth to this nation. The value and power of such a tax was so well recognized at the time of the adoption of the Federal Constitution that the authority to impose excises was expressly in that instrument delegated to the Federal Government by the States. Many State Constitutions, notably of the older commonwealths, likewise expressly authorize or restrict the imposition of such taxes in *eo nomine.*

Attempts have been made to define such a tax, but definitions are short lived and must change as new conditions arise to require a new exercise of the power defined.

It has been generally recognized that excises are "taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." Cooley, Const. Lim. (7th Ed.), 680; *Flint v. Stone Tracy Co.,* 220 U. S., 107, 31 S. Ct., 342, 55 L. Ed., 389, Ann. Cas., 1912-B, 1312; *Patton v. Brady,* 184 U. S., 608, 22 S. Ct., 493, 46 L. Ed., 713; *Maine v. Grand Truck R. Co.,* 142 U. S., 217, 12 S. Ct., 121, 35 L. Ed., 994.

"If a tax on the use or consumption of gasoline is intrinsically an excise tax, as held by the United States Su-

preme Court, then it is an excise tax everywhere. The Constitution of the State does not affect at all the generic quality of the tax, but merely the right of the State to impose it." *Foster & Creighton Co. v. Graham, supra.*

In South Carolina, neither the Constitution of 1868 nor 1895 expressly or impliedly makes reference to excise taxes, though their existence must naturally be assumed to have been known to the framers of these instruments. The lack of restriction in them on the inherent power of the Legislature to impose such taxes affords ground for the conclusion that the power was purposely left unrestricted while the mode of exercising other taxing powers was provided for.

As was so well said in *State v. Hayne,* 4 S. C., 419: "Where the Constitution undertakes to regulate the exercise of the taxing power, by prescribing the mode by which the revenues of the State shall be raised, in the absence of the expression of a clear intent to exclude other modes of raising revenue than that prescribed, such regulation, while it must be construed as imposing a political duty on the Legislature, cannot be held as circumscribing its constitutional powers so as to exclude a resort to other means of raising revenue where, in its judgment, an exigency exists calling for a resort to such auxiliary means of raising revenue."

See, also, *Lillard v. Melton,* 103 S. C., 16, 87 S. E., 421; *Alderman v. Wells,* 85 S. C., 507, 67 S. E., 781, 27 L. R. A. (N. S.), 864, 21 Ann. Cas., 133.

"It is elementary, of course, that the power of the Legislature is plenary in the absence of any constitutional limitation," *Walpole v. Wall,* 153 S. C., 114, 149 S. E., 760, 763; that a State Constitution is not a grant of power but rather a limitation of legislative power, *Evans v. Beattie,* 137 S. C., 512, 135 S. E., 538, and that "the right to tax is not granted by the Constitution." *People v. Reardon,* 184 N. Y., 431, 77 N. E., 970, 973, 8 L. R. A. (N. S.), 320, 112 Am. St. Rep., 628, 6 Ann. Cas., 515.

"Except in so far as it is limited by the State and Federal Constitutions, the taxing power of the State is general and absolute and extends to all persons, property, and business within its jurisdiction or reach." *Santee Mills v. Query, supra.*

Hence, there have been heretofore recognized in South Carolina, such excise taxes as those on inheritances, documentary stamps, corporate privileges and franchises, the sale of gasoline, and the like.

We find no inhibition in our State Constitution and hold that the Legislature has the power to exact this tax.

The contention of petitioner that this tax, even if an excise tax, is invalid because it subjects to taxation the mere right to own, hold and possess property, likewise cannot be sustained. The cases cited in support of this contention were fully considered in *Sheip & Co. v. Amos, supra,* from Florida, and *Foster & Creighton Co. v. Graham, supra,* from Tennessee, and clearly demonstrated to be inapplicable to the questions presented. With their conclusions we are fully in agreement.

As a protest, rather than an objection to the statute, petitioner finally urges that it is unjust to tax it and others in like plight for gasoline used in the process of manufacture, while other users of gasoline are benefitted by the tax imposed through use of the resultant good roads for the construction and maintenance of which the tax is expended. But, any benefit or improvement to the State as a whole must necessarily affect every citizen thereof, directly or indirectly. At any rate, there is nothing in the State or Federal Constitution which requires a State to apply such fees. to the benefit of those who pay them. *Carley & Hamilton v. Snook,* 281 U. S., 66, 50 S. Ct., 204, 74 L. Ed., 704, 68 A. L. R., 194.

We conclude, therefore, that as against the objections raised by petitioner, the Act of 1930 herein considered is valid and constitutional under both the State and Federal Constitutions.

As counsel for both parties have stipulated that if the Act be upheld, this Court should render final judgment in the cause, it is ordered, adjudged, and decreed that the temporary injunction herein is dissolved, the prayer for a permanent injunction denied, the petition dismissed, and that respondents have judgment against petitioner in the sum of $492.54, the amount of taxes assessed against the two shipments involved in this cause, pursuant to the terms and provisions of said Act. And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I will assume the correctness of the holding in the opinion of Mr. Justice Cosgrove that the tax provided for in the Act of 1930 is an excise tax and not a license tax upon an occupation or business. As a matter of fact however the title of the Act purports to impose a license tax upon gasoline (how this can be done is inconceivable), while the body of the Act requires the payment of a license tax by the "person, firm, corporation, municipality, county or subdivision thereof," which imports into this State and keeps in storage gasoline intended to be stored or used, of 6 cents per gallon.

(Attention should also be called to the fact that the tax is sought to be imposed upon importations from a foreign country, which is clearly contrary to the constitution. But as such an importation is not involved in the present suit, this objection may be waived.)

The *Sonneborn case,* 262 U. S., 506, 43 S. Ct., 643, 67 L. Ed., 1095, draws a distinction between importations from a foreign country and interstate commerce; it abrogates the rule which had been applied by what is known as the "Original Package" cases, the basis of which was that a sale and delivery after the transportation had been completed was a part of the interstate movement, and declares that an interstate shipment after delivery to and storage by the consignee and subsequently sold and delivered in original pack-

age in the state of delivery, may be made the basis of an occupation tax upon the consignee.

Assuming that a delivery to and storage by the consignee, without a sale, comes within the same rule, I think that the condition upon which the *Sonneborn case* was decided, does not exist in the present case. That condition is thus expressed in the *Sonneborn case:* " \* \* \* *When the State tax applies to all wholesale dealers in oil engaged in making sales and delivery in Texas.* \* \* \* The oil had come to a state of rest in the warehouse of the appellants, and had become a part of their stock with which they proposed to do business as wholesale dealers in the State. The interstate transportation was at an end, and whether in the original packages or not, a State tax upon the oil as property or upon its sale in the State, *if the State law levied the same tax on all oil or all sales of it, without regard to origin,* would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject. \* \* \* A State tax upon merchandise brought in from another state or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, *is lawful only when the tax is not discriminating in its incidence against the merchandise because of its origin in another State."*

It is clear from the terms of the Act of 1930 that it applies exclusively to importations "from any other State or foreign country," which constitute, as recognized by the Act, "interstate commerce."

It is alleged in the complaint, and admitted by the demurrer, that gasoline is manufactured from the raw product in South Carolina; the Act has no application to it; necessarily a discrimination against interstate commerce. The fact, if it be a fact, that the tax is being collected from such manufacturers in this State does not alter the situation; they are not required under the Act to pay it while in storage.

This I think is sufficient to show the unconstitutionality of the Act in its present form; I am not to be understood as approving or disapproving the conclusions announced in the leading opinion upon other questions involved in the appeal.