14122

FULGHUM v. BLEAKLEY

(181 S. E., 80)

*Messrs. T. B. Greneker* and *Bussey & Fulcher,* for appellant,

*Messrs. J. Strom Thurmond* and *Pierce Brothers,* for respondent,

August 8, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

On August 20, 1933, the plaintiff, Fulghum, was traveling, as an invited guest without the payment of any fare, in the automobile of the defendant, Bleakley, from the Bath Lake in South Carolina to Augusta, Ga. Just south of Clearwater, within this State, while descending a hill, the

machine in which they were riding ran into the back of another car, and as a result of the collision Fulghum sustained severe personal injuries. This action was then brought for damages for the injuries so received; it being alleged that the heedless and reckless acts of Bleakley, in the driving of his automobile, were the direct and proximate cause thereof. In due time on trial of the case, the defendant moved for a directed verdict on the ground that the plaintiff had failed to establish his right to recover under the statute controlling in an action of this kind, as the evidence did "not show that the injury was intentional on the part of the defendant, or caused by his heedlessness or reckless disregard of the rights of others." The Court overruled the motion, and the jury found for the plaintiff $500.00. From judgment duly entered, this appeal is taken.

The Act referred to, now appearing as Section 5908 of the Code of 1932, and under which this action was brought, was passed by the Legislature in 1930 (36 St. at Large, page 1164), Section 1 of which reads as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such automobile, its owner or operator for injury, death or loss, in case of accident unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

It appears that the first guest statute, of which ours is an exact copy, was passed by the Legislature of Connecticut in 1927 (Pub. Acts. 1927, c. 308) and had been construed by the Supreme Court of Errors of that state before its adoption and enactment by the lawmaking body of South Carolina. In *Silver v. Silver*, 108 Conn., 371, 143 A., 240, 241, 65 A. L. R., 943, decided in 1928, the Court fully discussed the purpose of the Legislature in the enactment of the statute, and pointed out that it had been previously held in that jurisdiction, in line with the weight of authority elsewhere, that the owner of an automobile who

invited a guest to ride with him was bound to exercise only ordinary or reasonable care in the operation of the vehicle. It then said:

"It is the contention of the plaintiff that the statute effects no change in the liability of the owner or operator to his guest, and that the former is still liable if the accident is caused by his 'heedlessness,' which the plaintiff claims is the equivalent in meaning of carelessness or negligence. * * * The question for our consideration, however, is not the meaning of a single word in an abstract sense, but its meaning with due regard to its context and the meaning of the entire phrase or sentence in which it appears. We must assume that the Legislature was familiar with the decisions of this Court permitting a recovery by a guest in an automobile for injuries resulting from the negligence of the owner or operator, and that, when it undertook to legislate upon that subject, it was with the purpose of making some change in the existing law. *City of Stamford v. Stamford*, 107 Conn., 596, 141 A. [891], 895. Such purpose is pretty clearly indicated in the title of the Act and in the first clause of the first section, which provides that no guest shall have a cause of action against the owner or operator of the car in case of accident. Then follows a statement of the exceptions to the general rule: 'Unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others.'

"If the phrase 'or caused by his heedlessness' is to be taken as strictly disjunctive as by itself constituting an exception to the general rule of nonliability, and 'heedlessness' is held to be synonymous with 'negligence,' the entire statute is nugatory and effects no change whatever in the law as it existed before its enactment. We do not think that is a sensible construction of the statute. It would utterly fail to effectuate the obvious purpose of the Legislature in some way to limit the liability of the owner or operator of a motor vehicle to one who was riding in it as his guest. The language

of the statute indicates an intention to limit such liability to two classes of cases : First, when the accident was caused by intentional misconduct; and, second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence."

In *Bordonaro v. Senk,* 109 Conn., 428, 147 A., 136, 137, decided in 1929, the matter of the construction of the statute was again considered; and, in approving the conclusions reached in *Silver v. Silver, supra,* the Court further observed : "The framers of the statute undoubtedly used the noun 'heedlessness' in place of the adjective 'heedless' and the word 'or' for 'and.' The phrase 'or caused by his heedlessness or his reckless disregard of the rights of others' meets the legislative intention when it is contrued to read 'or caused by his heedless and his reckless disregard of the rights of others.' " And in *Grant v. MacLelland,* 109.Conn., 517, 147 A., 138, 139, it was held that the interpretation given the statute in the *Bordonaro case* "must be regarded as final." See, also, the following decisions of the same Court : *Ascher v. H. E. Friedman, Inc.,* 110 Conn., 1, 147 A., 263; *Rindge v. Holbrook,* 111 Conn., 72, 149 A., 231; *Potz v. Williams,* 113 Conn., 278, 155 A., 211; *Sadinsky v. Coughlin,* 114 Conn., 585, 159 A., 492.

As we have said, at the time of its passage by our Legislature in 1930, the statute had been construed by the Connecticut Court as above indicated; and the effect of this pertinent fact is to raise the presumption, there being no express provision to the contrary that the Legislature intended such interpretation to form a part of the Act as adopted by it. *Fuller v. South Carolina Tax Commission,* 128 S. C., 14, 121 S. E., 478, 481; *Ashley v. Brown,* 198 N. C., 369, 151 S. E., 725; *Commonwealth v. Huntington,* 148 Va., 97, 138 S. E., 650.

In the *Fuller case,* the Court said:

"Where the language incorporated into a statute is identical or substantially identical with that appearing in similar statutes of other states which have received judicial construction and interpretation prior to the adoption of the statute under consideration, in the absence of an expressed intention to the contrary it will be presumed that the subsequently enacted statute was intended to be understood and applied in accordance with the construction given it by the Courts of the state which had first adopted it. 25 R. C. L., 1069-1071; *Simpson v. Willard,* 14 S. C., 191."

But, aside from this, we conclude, for the reasons ▪▪▪ stated by it, that the Connecticut Court was correct.

When effect is given to the manifest intention of the Legislature, which is a settled rule of statutory construction (*Gregg Dyeing Co. v. Query,* 166 S. C., 117, 164 S. E., 588), such a conclusion would seem inescapable. It will be presumed, in construing a statute, that the General Assembly did not intend to do a futile thing. *Graham v. State,* 109 S. C., 301, 96 S. E., 138. Hence we may assume that, when the lawmaking body undertook to legislate upon this subject, it did so with the purpose of making some change in the then existing law. *Silver v. Silver, supra.*

The respondent argues, however, that the wording of the Act is plain and unambiguous and should not be changed in order to give the statute a different interpretation. For the reasons stated, this position cannot be sustained. As observed in *State ex rel. Walker v. Sawyer,* 104 S. C., 342, 88 S. E., 894, 895: "While it is an elementary rule of construction that words used in a statute should be given their plain and ordinary meaning, this, as all other rules, is subject to the prime object of ascertaining and giving effect to the legislative intention. In doing this, we are not to be governed by the apparent meaning of words found in one clause, sentence, or part of the Act, but by a consideration of the whole Act, read in the light of the conditions and circumstances as we may judicially know they appeared to the Legislature, and the purpose sought to be ac-

complished." To illustrate: This Court has held, in order to effectuate legislative intention, that "and" should read "or" (*Robson v. Cantwell,* 143 S. C., 104, 141 S. E., 180, 181); that "may" is often construed "must" or "shall" (*Moore v. Waters,* 148 S. C., 326, 146 S. E., 92); that "hereinafter" should read "hereinbefore" (*Waring v. Cheraw & D. Railway* Co., 16 S. C., 416); and that the word "of" should be construed to mean "or" (*Kitchen v. Southern Railway,* 68 S. C., 554, 48 S. E., 4, 1 Ann. Cas., 747).

In *Stackhouse v. County Board of Commissioners,* 86 S. C., 419, 68 S. E., 561, 562, the general rule is thus stated: "However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect."

We think, upon full consideration of the question before us, that, as held in the *Bordonaro case, supra,* the phrase in the Act, "or caused by his heedlessness or his reckless disregard of the rights of others," meets the plain legislative intention when it is construed to read, "or caused by his heedless and his reckless disregard of the rights of others." This is not a strained interpretation of the statute, and gives effect to the evident purpose of the Legislature in its enactment.

As to the causes of action given the guest under the Act as construed—there being none for ordinary negligence— we quote again from the *Bordonaro case,* above cited: "The liability of the owner or operator of a motor vehicle to his nonpaying guest is limited to two classes, as we state in *Silver v. Silver, supra:* First, when the accident was caused by the intentional act or conduct of the owner or operator. Intentional as used in this connection connotes the causing of the act or conduct purposely, willfully, or designedly. Second, when the accident was caused by the

heedless and reckless disregard of the rights of others by the act or conduct of the owner or operator. Heedless in this connection means careless; it does not add to the significance or the characterization or the force of the act or conduct done in reckless disregard of the rights of others by the owner or operator. Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another." See, generally, as to the term "reckless," *Proctor v. Southern Railway Co.,* 61 S. C., 170, 39 S. E., 351; *Gosa v. Southern Railway,* 67 S. C., 347, 45 S. E., 810; *Cole v. Blue Ridge Railway,* 75 S. C., 156, 55 S. E., 126; *Siesseger v. Puth,* 213 Iowa, 164, 239 N. W., 46.

We now come to the question, Did the evidence, under the construction we have given the statute, require the submission of the case to the jury? As there is no claim here of any intentional misconduct, we need only inquire whether there was any testimony from which it might be reasonably inferred that the respondent's injuries were caused by the heedless and reckless disregard of his rights by the appellant, the owner and operator of the automobile.

Hankinson, a witness for the plaintiff, testified that he attended the party at Bath Lake on the night in question, and that, when he left there about 1 o'clock in the morning, Bleakley and Fulghum were just behind him in Bleakley's car, and that both cars were running between fifty and sixty miles an hour "from the time we got on the highway until the accident occurred." He further stated that, when he reached the crest of a hill, he saw, at some distance down the road, a car parked on its right-hand side facing in his direction, and another headed toward him going in the direction of Aiken, and still another in front of him moving in the direction that he was going; that the car coming up the hill from Augusta blocked the road, while the one in

front of him slowed down, all of which he could clearly see, as "there was no obstruction between the top of the hill and those three cars with lights on." He also testified that, when he saw the dangerous situation thus created, he knew he had to slow down and did so, and that he put his arm out of the car as far as possible and signaled to Bleakley to do the same thing; that Bleakley, however, disregarded the signal and came on down the road at a high rate of speed and, between one hundred and one hundred and fifty yards from the top of the hill, ran into the rear of Hankinson's car and "knocked it about twenty yards with my brakes on." The defendant denied some of the statements made by the witnesses for the plaintiff, but said that, while he did not get Hankinson's signal, he "could see there was danger without him holding out his hand." It is conceded that the respondent was painfully injured.

We think that the testimony, much of which we deem it unnecessary to review, made a question of fact for the jury as to the defendant's reckless disregard of the plaintiff's rights, in the operation of his car at the time and place of the collision. The trial Judge therefore properly refused to grant the motion for a directed verdict.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.