EL PUEBLO DE PUERTO RICO (ESTADO LIBRE ASOCIADO DE PUERTO RICO), peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JULIO SUÁREZ GARRIGA, Juez, demandado.

Número 1995.

*Sometido:* 1 de junio de 1953. *Resuelto:* 18 de diciembre de 1953.

536

*Hon. Secretario de Justicia José Trías Monge, Rafael L. Ydrach Yordán* y *Jaime García Blanco, Fiscal Auxiliar y Fiscal Especial, Tribunal Supremo,* respectivamente; *Santos P. Amadeo, Osvaldo Goyco Monagas* y *Antonio J. Amadeo,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El 10 de julio del pasado año un fiscal auxiliar del antiguo Tribunal de Distrito de Puerto Rico formuló acusación contra Alberto De la Rosa Lafontaine por el delito de mutilación. Ni al momento de presentarse la acusación ni antes de ello se libró contra el acusado orden de arresto alguna, debido al hecho de que éste era un militar que se hallaba al servicio activo del gobierno de Estados Unidos de América. Al ser llamado el caso para juicio el 30 de septiembre siguiente, el fiscal solicitó del tribunal que de conformidad con las disposiciones del artículo 73 del Código de Enjuiciamiento Criminal expidiera orden de arresto (*bench warrant*) contra el acusado, indicando por qué tal orden no se expidió por él en su oportunidad, así como que el acusado había sido licenciado y no obstante las diligencias practicadas al efecto el márshal no había podido hallarle ni, por ende, citarlo para juicio. Replicó el juez que presidía la sala que no procedía la expedición de una orden de arresto por el tribunal con la mera radicación de una acusación firmada y jurada por el fiscal, y que de acuerdo con la sección 10, párrafo 3, del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico para él poder librar la orden de arresto interesada era menester que se le demostrara la existencia de causa probable, apoyada en juramento o afirmación. Solicitada reconsideración por el fiscal, la misma fué denegada. Para revisar la resolución así dictada, en 20 de febrero del año en curso libramos a instancias de El Pueblo un auto de *certiorari*. El peticionario ha radicado un extenso alegato. Asimismo lo ha hecho el demandado. El acusado, sin embargo, no se ha personado en autos, no obstante haber sido notificado por su abogado con copia de la petición y de la resolución dictada por nosotros— regla 15 (*e*) de este Tribunal.

Las contenciones fundamentales del peticionario son que el tribunal recurrido erró al negarse a expedir una orden de arresto contra el acusado, no obstante obrar en autos una acusación radicada contra éste el 10 de julio de 1952, siendo ello contrario a las disposiciones del artículo 73 del Código de

Enjuiciamiento Criminal vigente; y al exigirle al fiscal que demostrara la existencia de causa probable para poder expedir la orden de arresto que solicitaba. Y la del tribunal recurrido que actuó acertadamente.

■■ El artículo 73 del Código de Enjuiciamiento Criminal—nervio del argumento de El Pueblo—dispone que "Si los hechos expresados en la acusación constituyen delito que puede ser juzgado por el tribunal, éste ordenará al secretario del mismo que expida una orden de arresto contra el acusado." [1]

Si al resolver el problema aquí envuelto tuviéramos que regirnos única y exclusivamente por las disposiciones de ese artículo y por otros preceptos de ley vigentes antes del 25 de julio de 1952, es innegable que el fiscal estaría en lo cierto y que el juez del tribunal recurrido hubiese estado en la obligación de librar la orden de arresto interesada inmediatamente que se radicó la acusación imputando la comisión del delito en cuestión. Mas, estrictamente hablando, no es ésa la situación aquí. El problema con que nos confrontamos hay que resolverlo tomando en consideración no sólo el contexto del citado artículo sino también la Constitución del Estado Libre Asociado de Puerto Rico y varias disposiciones legales a que haremos referencia en el curso de esta opinión, aprobadas por nuestra Asamblea Legislativa para complementar aquélla.

Desde el año 1902 y hasta que empezó a regir en 25 de julio de 1952 la Constitución del Estado Libre Asociado de Puerto Rico, los promotores fiscales eran magistrados con autoridad para dictar órdenes de arresto contra toda persona acusada de delito público—artículos 12 y 13 del Código de Enjuiciamiento Criminal. [2] Según el artículo 3 de ese

---

[1] Es cuestión admitida que la acusación presentada expone hechos constitutivos del delito imputado.

[2] Conforme al artículo 12 del Código de Enjuiciamiento Criminal "Entiéndese por magistrado un funcionario con autoridad para dictar orden de arresto contra una persona acusada de delito público."

De acuerdo con el artículo 13 del mismo Código *Son magistrados las* siguientes personas:

Código *"Todo delito* respecto del cual tuviere jurisdicción original la corte de distrito, *deberá perseguirse en virtud de acusación presentada por el fiscal en sala de justicia y confirmada con su declaración jurada que será suficiente si* en ella se expresa que la acusación se funda en las declaraciones de testigos juramentados por él o las declaraciones de testigos examinados ante un juez instructor, y que *él cree solemnemente que existe justa causa para formular la acusación . . ."*. (Bastardillas nuestras.) De acuerdo con el artículo 44(*a*) del mismo, antes de ser enmendado por la Ley 22 de 24 de julio de 1952, Ses. Ext., pág. 93, "En toda orden de arresto se fijará la cuantía de la fianza, *la cual podrá* hacerse efectiva y *admitirse por cualquier* juez, *fiscal* o secretario de corte." (Bastardillas nuestras.) Su artículo 72 preceptúa, luego de expresar sustancialmente la forma en que puede estar radicada toda acusación, que la misma será firmada por el fiscal y que éste prestará un juramento en que certificará que la acusación está presentada tomando como base para ello la declaración jurada de testigos examinados por él y que *cree solemnemente que existe justa causa para presentar la acusación.* Su artículo 95 que "El fiscal es el acusador público en el distrito judicial para el cual esté nombrado . . .". El 97 que *"El fiscal tendrá facultad para expedir órdenes de arresto, . . . ."*. (Bastardillas nuestras.) El 98 que en todos los casos que no fueren de la competencia del juez de paz, si se hubiera obtenido prueba suficiente de haberse cometido un delito grave (*felony*) "y existieren motivos verosímiles para creer en la culpabilidad del acusado, el fiscal presentará una acusación, de acuerdo con lo dispuesto en la ley." El 99 que "si después de oír las declaraciones de los testigos resultare . . . que no hay causa suficiente (*sufficient cause*) para creer en la culpabilidad del acusado, el fiscal debe orde-

---

"1. Los jueces de la Corte Suprema.
"2. Los jueces de las cortes de distrito.
"3. Los jueces de paz.
"4. *Los promotores fiscales."* (Bastardillas nuestras.)

nar que el acusado sea puesto en libertad, . . . ." y el 100 (antes de ser enmendado por la Ley 22 de 1952, supra) que *"Si resultare,* sin embargo, *del examen de los testigos que se ha cometido un delito público y que hay causa suficiente (sufficient cause) para creer que el acusado es culpable de su perpetración, el fiscal ordenará el arresto del acusado, expidiendo al efecto un mandamiento de arresto . . . ."*. (Bastardillas nuestras.) Así, pues, de los anteriores preceptos de ley se desprende de la manera más palmaria que el fiscal fué hasta entonces (25 de julio de 1952) un magistrado, con plena autoridad para expedir órdenes de arresto y para fijar y aprobar fianzas, siempre que a su juicio existiera causa probable o suficiente para imputar a una persona la comisión de un delito. *Jiménez* v. *González,* 71 D.P.R. 118, 122; *Cf. Ex parte Vilar,* 17 D.P.R. 842. También, que de no haberse detenido al acusado a virtud de orden de arresto librada por el fiscal, el tribunal estaba en la obligación de ordenar al secretario que expidiera una orden de arresto contra el acusado tan pronto el fiscal formulaba una acusación imputando un delito público y radicaba la misma en corte abierta. Todo ello era así porque el fiscal participaba de dualidad de carácter, es decir tenía tanto funciones ejecutivas como judiciales. Al ejercer estas últimas la ley le facultaba para aquilatar las declaraciones de los testigos que habían declarado ante el juez de paz, ante el juez municipal o ante él mismo y para llegar a la conclusión de si, a virtud de la aquilatación que hacía, existía causa probable para proceder contra un acusado. Hecha esa determinación por el fiscal, al presentarse la acusación en corte abierta, sin haberse librado previamente orden de arresto contra el acusado, era innecesario que el tribunal hiciera nueva determinación sobre la existencia de causa probable—ésta ya había sido hecha por el fiscal, que era un magistrado—y su obligación (la del tribunal) era expedir la consiguiente orden de arresto como cosa rutinaria. El pro-

cedimiento así seguido no infringía en forma alguna las disposiciones del párrafo 14 del Artículo 2 de la Ley Orgánica de 2 de marzo de 1917 que entonces regía en Puerto Rico.(3) 39 Stat. 951; 48 U.S.C.A. 227.

 Empero, desde el 25 de julio de 1952 la situación ha cambiado. Tenemos de un lado que la Constitución del Estado Libre Asociado de Puerto Rico, con vigencia a partir de dicho día, dispone en el párrafo 3 de la Sección 10 del Artículo II (Carta de Derechos) que *"Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación,* describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse." (Bastardillas nuestras.) Y de otro que en armonía con la Sección 1 de su Artículo V (del Poder Judicial), "El poder judicial de Puerto Rico se ejercerá por un Tribunal Supremo, y por aquellos otros tribunales que se establezcan por ley." Por las anteriores disposiciones constitucionales vemos que hoy en día mandamientos como el aquí interesado sólo pueden ser librados "por autoridad judicial" y que el "poder judicial" reside en este Tribunal Supremo y en aquellos otros tribunales que se establezcan por ley.(4)

---

(3) El párrafo 14 del Artículo 2 de la Carta Orgánica que rigió en Puerto Rico del 2 de marzo de 1917 hasta el 25 de julio de 1952, fecha esta última en que empezó a tener efectividad nuestra actual Constitución, disponía:

"No se expedirá mandamiento de arresto o registro sino por motivo fundado, apoyado con juramento o afirmación, y describiendo particularmente el lugar que ha de registrarse y las personas que han de ser detenidas o las cosas que deben ser embargadas."

(4) De acuerdo con la Ley núm. 11 de 24 de julio de 1952 (Ses. Ext., pág. 31) "El poder judicial del Estado Libre Asociado de Puerto Rico residirá en un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración compuesto por el Tribunal Supremo como tribunal de última instancia, y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia."

Según la sección 9 de la misma ley "El Tribunal de Primera Instancia se compondrá de dos secciones, una que se conocerá como Tribunal Superior y otra que se conocerá como Tribunal de Distrito," siendo cada sección un tribunal de récord.

Es de rigor admitir que la enmienda IV de la Constitución de los Estados Unidos de América es substancialmente igual al párrafo 3 de la Sección 10 del Artículo II de nuestra Constitución, supra. Esa enmienda dispone que "No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y *no se expedirá ningún mandamiento, sino a virtud de causa probable*, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado; y las personas o cosas que han de ser detenidas o incautadas." (Bastardillas nuestras.) También es una realidad que interpretando lo así preceptuado por esa enmienda constitucional, se ha decidido que un tribunal carece de discreción para negarse a librar una orden de arresto cuando se trata de la acusación de un gran jurado (*indictment*), puesto que semejante acusación determina de manera concluyente la existencia de causa probable. *Ex parte United States*, 287 U. S. 241. Al así concluirse se ha tomado en consideración que los procedimientos ante un gran jurado participan de la naturaleza de una pesquisa o investigación judicial.([5]) *Cobbledick* v. *United States*, 309 U. S. 323, 327. Véanse también *State* v. *Crowder*, 136 S. E. 337; *State* v. *Burney*, 84 S.W.2d 659, 664; *Ex parte Kennedy*, 33 S.W.2d 443; 38 C.J.S. pág. 980, sección 1; *cf. In re Bruns*, 15 Cal. App. 2d 1. A igual conclusión se ha llegado cuando la acusación fiscal ha estado precedida por la investigación hecha por un juez y por la previa determinación por éste de causa probable —véanse casos antes citados—. Asimismo se ha resuelto que

La sección 21 de esa ley crea el cargo de juez de paz, y la 22 dispone que "Los jueces de paz ejercerán todas las funciones y poderes de la autoridad judicial ejercidos por los jueces de paz al tiempo en que esta Ley empiece a regir, incluyendo la función y facultad de fijar y aprobar fianzas y de expedir órdenes de arresto y de registro y allanamiento, en casos apropiados, según dispuesto por ley, . . .".

([5]) Véase la Ley núm. 58 de 18 de junio de 1919 (pág. 303) "Estableciendo el Gran Jurado en Puerto Rico;" según fué enmendada por la núm. 98 de 28 de agosto de 1925 (pág. 789.)

un *"bench warrant"* únicamente puede expedirse al quedar probada la existencia de causa probable, —*Hughes* v. *Gault*, 271 U. S. 142—que la determinación de causa probable para la expedición de una orden de arresto es función judicial; que semejante orden no se librará a base de una declaración jurada en que se dice que los hechos en ella expuestos le constan al deponente "por información y creencia." —*United States* v. *Michalski*, 265 Fed. 839; *Johnston* v. *United States*, 87 Fed. 187; *United States* v. *Tureaud*, 20 Fed. 621; *Cyclopedia of Federal Procedure*, vol. 11, 3ra. ed., pág. 347, sección 42.15; —y que la declaración jurada que servirá de fundamento a la expedición de una orden de arresto deberá demostrar hechos que consten de propio y personal conocimiento al deponente. *United States* v. *Kennedy*, 5 F.R.D. 310.

En *Albrecht* v. *United States*, 273 U. S. 1, 71 L. ed. 505, citado por las partes, Albrecht y otros fueron sentenciados por infracción a la Ley Nacional de Prohibición. Ellos fueron arrestados a virtud de un *bench warrant* librado por el tribunal. Al ser traídos a presencia de éste, prestaron fianza. Al así hacerlo no levantaron cuestión alguna en torno de la jurisdicción del tribunal ni de la forma en que se había ejecutado el mandamiento de arresto. Más tarde radicaron moción insistiendo en que el tribunal carecía de jurisdicción. Su contención principal fué que la acusación no estaba jurada por el fiscal y que las declaraciones anexas habían sido juradas ante un notario público, que era persona carente de autoridad para tomar juramentos en causas criminales. Con permiso del tribunal se juraron ante el secretario auxiliar nuevas declaraciones y declaraciones adicionales. Una vez más los acusados impugnaron la acusación y mandamiento de arresto, basados en los mismos motivos. Declarada sin lugar su moción se les juzgó con el resultado que conocemos, y llevado el asunto al Tribunal Supremo de los Estados Unidos éste se expresó así:

"Toda vez que los affidavits que sirvieron de base al mandamiento no fueron jurados debidamente, el arresto se hizo en vio-

lación de la cláusula contenida en la Cuarta Enmienda que declara que 'no se expedirá ningún mandamiento sino a virtud de causa probable, apoyado por juramento o afirmación.' Véanse *Ex parte Burford*, 3 Cranch 448, 453; *United States* v. *Michalski*, 265 Fed. 839. Mas de ello no se desprende que por haber sido ilegal el arresto la acusación sea nula."

Y en respuesta a la contención de que la acusación no fué presentada bajo la fe del juramento oficial del fiscal federal y que en lugar de ello se había dado a entender al tribunal que la misma se basaba en las declaraciones juradas en cuestión, el Tribunal Supremo de la nación continuó diciendo:

"La referencia que en la acusación se hace a las declaraciones juradas no debe interpretarse como indicativa de que la misma fué presentada en otra forma que no fuera bajo la fe del juramento del fiscal federal. A las declaraciones juradas se hizo indudablemente referencia en la acusación no para servir de causa probable a ésta sino porque el propósito fué utilizar la acusación y los affidavits anexos como base para solicitar la expedición de una orden de arresto . . . El hecho de que la acusación y las declaraciones juradas sirvieran de base para solicitar un mandamiento de arresto no afectó la validez de la acusación como tal . . ."

En nuestra opinión, la cuestión que nos ocupa no es de difícil solución, no sólo por la fraseología de las disposiciones antes copiadas de la Constitución del Estado Libre Asociado de Puerto Rico, sí que también por las de la ley ya citada y por la manera terminante y precisa en que la "Comisión de Carta de Derechos" se expresó en relación con el aludido párrafo tercero de la Sección 10 del Artículo II de nuestra Constitución, al rendir su informe ante la Convención Constituyente. Reza éste en lo esencial así:

"Hemos usado lenguaje que expresamente limita el poder de expedir órdenes de arresto o allanamiento a la 'autoridad judicial.' Esta expresión se usa con el propósito deliberado de privar a los fiscales de la autoridad que ahora ejercen de expedir órdenes de arresto, lo que conlleva la determinación de causa probable, y de señalar y aprobar fianzas. Ellos no han disfru-

tado de la facultad de ordenar allanamientos y registros. Si la hubiesen disfrutado, el lenguaje que estamos usando también tendría el efecto de privarles de la misma.

"Entendemos que darle a los fiscales la condición de magis-- trados, como lo hace el Artículo 13 del Código de Enjuiciamiento Criminal vigente, o darles la facultad de ordenar arrestos, y el poder correspondiente de determinar la existencia de causa pro-- bable, como lo hace el Artículo 97 del mismo cuerpo legal, contra-- viene el buen funcionamiento de la justicia bajo un gobierno de: tres (3) poderes separados. El fiscal, no siendo propiamente una parte del poder judicial, sino el abogado de la rama ejecu- tiva, no debe asumir funciones judiciales. Dentro de la confu-- sión creada en nuestra carta orgánica por la magnitud de poderes judiciales conferidos en ella a la oficina del Procurador General es comprensible que se desarrollara entre nosotros la práctica que interesamos rectificar. Ahora que estamos redac- tando nuestra propia constitución creemos especialmente atinado hacer constitucionalmente la modificación que corresponde.

"Sabemos que el sistema propuesto traerá dificultades prác- ticas al principio. Nuestra organización penal está montada sobre la base de que el fiscal puede determinar la existencia de causa probable, y ordenar arrestos y señalar y aprobar fianzas. Pero las dificultades con que se tropiece al principio quedarán compensadas cuando en definitiva se logre, como habrá de lo- grarse, más pureza y más garantías en los procedimientos criminales." (6)

En su consecuencia, el propósito de privar a los fiscales de la facultad de expedir órdenes de arresto resulta paladino, así como el de que sea el magistrado el que para tal fin haga la

---

(6) En la obra "Notes and Comments on the Constitution of the Com- monwealth of Puerto Rico", Wáshington, D. C., marzo 1952, al discutirse la Sección 10 del Artículo II de nuestra Constitución se dice:

"La disposición de que no se expedirán mandamientos de arresto, de re- gistro o de allanamiento a no ser por la autoridad judicial, tiende a clarificar la práctica legal existente en la actualidad en Puerto Rico y de privar a los fiscales de la autoridad que han ejercido de conformidad con la ley de librar órdenes de arresto. Según la práctica criminal local únicamente los jueces podían librar órdenes de registro o allanamiento, mientras que las de arresto podían ser libradas además por los fiscales. Ante el lenguaje ex- preso de esta disposición y los debates en torno a la misma, resulta claro que tan pronto la Constitución sea aprobada toda autoridad para librar órdenes de arresto, de registro o de allanamiento residirá en el poder judicial."

determinación de la existencia de causa probable "apoyada en juramento o afirmación", siendo insuficiente para ello la mera radicación por el fiscal de una acusación que impute la comisión de un delito público.

◼ Pero si ello no bastara para concluir que la mera radicación por el fiscal de una acusación jurada no es suficiente para que un juez deba, por ese solo hecho, expedir una orden de arresto, bastará decir que por la Ley núm. 22 de 24 de julio de 1952, pág. 93, se enmendaron los artículos 13, 44(a) y 100 del Código de Enjuiciamiento Criminal y que a virtud de esas enmiendas es imperativo concluir que la orden de arresto interesada no procedía. Ésa es la ley a que ya hemos hecho referencia, que instrumenta estas disposiciones de nuestra Constitución. La enmienda al artículo 13 de dicho Código consistió en la eliminación de los promotores fiscales como magistrados; la hecha al artículo 44(a) en la eliminación del "fiscal" como persona ante la cual podrá hacerse efectiva y admitirse una fianza; y la hecha al artículo 100 en la substitución de las palabras "el fiscal ordenará el arresto del acusado, expidiendo al efecto un mandamiento de arresto" que figuraban en dicho artículo, según el mismo rigió desde 1902, por las palabras "el fiscal someterá ante un magistrado evidencia de causa probable de la comisión de un delito público por el acusado y si el magistrado considera que existe causa probable, expedirá un mandamiento de arresto contra el acusado." (⁷)

---

(⁷) Los artículos 13, 44(a) y 100 del Código de Enjuiciamiento Criminal, según quedaron enmendados por la Ley 22 de 24 de julio de 1952, pág. 93, textualmente copiados rezan del siguiente modo:

"Artículo 13.—Son Magistrados: Los Jueces del Tribunal Supremo y los Jueces de los demás tribunales establecidos por ley, y los Jueces de Paz."

"Artículo 44(a).—En toda orden de arresto se fijará la cuantía de la fianza la cual podrá hacerse efectiva y admitirse por cualquier juez o secretario del tribunal, o por un Juez de Paz."

"Artículo 100.—Si resultare, sin embargo, del examen de los testigos que se ha cometido un delito público, y que hay causa suficiente para creer que el acusado es culpable de su perpetración, el fiscal someterá a un magistrado evidencia de causa probable de la comisión de un delito público por el acusado, y si el magistrado considerare que existe causa probable, expedirá un mandamiento de arresto contra el acusado."

La Ley 22 de 1952, supra, también enmendó el artículo 74 del Código de Enjuiciamiento Criminal. Éste reza ahora así:

"El Secretario, en virtud del mandato de un juez del tribunal, esté o no constituído en sesión el tribunal, expedirá bajo su firma y con el sello del tribunal una orden de prisión para el arresto del acusado como resultado de la presentación de la acusación."

Su contexto puede armonizarse con el propósito que movió al legislador a enmendar todos los artículos del Código de Enjuiciamiento Criminal a que la citada ley hace referencia. Ese propósito aparece del informe de la Comisión Jurídica Penal de la Cámara de Representantes. No fué otro que privar a los fiscales de la autoridad de expedir órdenes de arresto y de fijar y aprobar fianzas. Dice así el informe:

"Este proyecto tiende a establecer, de acuerdo con la Constitución aprobada, que los Fiscales no formarán parte del engranaje de los Tribunales en Puerto Rico. Esto es, antes el Fiscal podía ordenar que se arrestara a una persona. Por este proyecto de ley se le quita esa facultad. El Fiscal podía determinar la fianza que se impusiera a cualquier persona. También se le quita esa facultad. Además el Fiscal podía ordenar o emitir una orden de excarcelación en virtud de la facultad que le daba la Ley. En virtud de este proyecto se le quita la facultad, porque de acuerdo con la Constitución aprobada no puede tener dichas facultades."

No puede interpretarse el artículo 74, según quedó enmendado, en el sentido de que, radicada una acusación, el juez del tribunal expedirá un mandato al secretario para que éste libre "una orden de prisión para el arresto del acusado," sin necesidad de que se le demuestre la existencia de causa probable. Tal interpretación no estaría en armonía con el propósito legislativo al enmendar los artículos a que hace mención la Ley 22, supra. Como esa interpretación significaría, además, una negación de la garantía constitucional de que se ha venido hablando, no podemos adoptarla, consistentes con la doctrina universalmente aceptada de que siempre que fuere posible se dará a las leyes una interpretación compatible con

su constitucionalidad. Por lo tanto, debemos declarar que la frase "como resultado de la presentación de la acusación" ni autoriza ni obliga a un juez a expedir automáticamente un mandato al secretario para el arresto del acusado por el mero hecho de que se haya presentado contra éste una acusación. Al igual que ocurre en los casos en que no se ha presentado acusación—en que el juez sólo puede ordenar el arresto del acusado si determina que existe causa probable para ello— cuando la acusación ya se ha presentado, el juez únicamente puede expedir su mandato al secretario después de haber determinado también la existencia de causa probable.

■ Examinado el lenguaje usado en los artículos antes citados, en especial el del artículo 100, a la luz de la fraseología del párrafo tercero de la sección 10 del Artículo II de nuestra Constitución, del Ínforme de la Comisión de Carta de Derechos de la Convención Constituyente y del informe de la Comisión Jurídica Penal de la Cámara de Representantes arriba copiados, la cuestión que nos ocupa tampoco nos parece de difícil solución. El contexto del artículo 100, supra, al efecto de que *"Si resultare, sin embargo, del examen de los testigos que se ha cometido un delito público y que hay causa suficiente para creer que el acusado es culpable de su perpetración, el fiscal someterá ante un magistrado evidencia de causa probable de la comisión de un delito público por el acusado, y si el magistrado considerare que existe causa probable, expedirá un mandamiento de arresto contra el acusado,"* (bastardillas nuestras) no puede dar lugar a otra interpretación que no sea la de que si investigado un delito por el fiscal éste llega a la conclusión de que hay causa suficiente para creer que el acusado es culpable de la comisión del mismo, su deber es someter a un magistrado—el artículo 13, supra, nos dice quiénes lo son—evidencia de causa probable de la comisión de tal delito público, siendo el magistrado el único funcionario autorizado por la Constitución y por la ley para determinar si existe la causa probable que justifica la expedición por el magistrado de una orden de arresto. El fiscal

ha sido privado de tal facultad. La evidencia de causa probable de la comisión de un delito público será sometida por el fiscal al magistrado por medio de declaración jurada o afirmación que induzcan a éste a creer que el acusado ha cometido el delito que se le imputa, sin que para ello sea necesaria la celebración de una vista. *Cf. Guadalupe* v. *Bravo*, 71 D.P.R. 975. Empero, a pesar de carecer el fiscal al presente de autoridad para expedir órdenes de arresto o para fijar y aprobar fianzas, él continúa teniendo autoridad para radicar acusaciones si "cree solemnemente que existe justa causa para formularlas"—artículos 3, 72, 95 y 98 del Código de Enjuiciamiento Criminal—ya que la disposición constitucional que nos ocupa no tiene el efecto de restringir tal autoridad.

El artículo 73 del Código de Enjuiciamiento Criminal no tiene en la actualidad eficacia alguna, toda vez que ha sido derogado *ipso jure* por el precepto de nuestra Constitución a que antes hemos aludido.

No debemos pensar que después de expresarse la Constituyente y el legislador en los términos que figuran en el párrafo tercero de la Sección 10 del Artículo II de nuestra Constitución y en los artículos del Código de Enjuiciamiento Criminal arriba copiados, según quedaron enmendados por la Ley 22 de 1952, supra, el propósito tanto de aquélla como de éstos haya sido permitir que continúe la antigua práctica de que con la mera radicación de una acusación por el fiscal, un juez deba expedir una orden de arresto, sin antes demostrársele (al juez) la existencia de causa probable, apoyada en juramento o afirmación. No debe presumirse que la Constituyente realizara un acto fútil, ni que las palabras usadas en el citado párrafo de la Sección 10 del Artículo II son letra muerta. A ellas debe dárseles vida, cumpliendo su propósito —*Cf. Standard Oil Co.* v. *State*, 118 So. 281; *Fulghum* v. *Bleakley*, 181 S. E. 30; *Mabie* v. *Fuller*, 174 N. E. 450; Sutherland, *Statutory Construction*, 3ra. ed., pág. 327, sección 4510—el que, como ya hemos dicho, no fué otro que el de

privar a los fiscales de las facultades ya indicadas y limitar el ejercicio de las mismas facultades al poder judicial, previa demostración a éste de causa probable. Tal fué el objetivo de la Asamblea Legislativa al enmendar los citados artículos.

El hecho de que el delito imputado se cometiera en 4 de mayo de 1952 y de que la acusación se presentara en 10 de julio siguiente, o sea antes de empezar a regir la Constitución del Estado Libre Asociado de Puerto Rico y la enmienda a los artículos 13, 44(a), 74 y 100 del Código de Enjuiciamiento Criminal,(8) no altera la situación. El fiscal, como hemos dicho, antes del 25 de julio de 1952 tenía facultad para expedir la orden de arresto que solicitaba. En dicho día la situación varió. Cuando en 10 de septiembre de 1952 se llamó el caso para juicio y se solicitó del tribunal la expedición de una orden de arresto, el deber del tribunal era actuar en armonía con la ley entonces vigente. Nadie tiene un derecho adquirido a determinado remedio—*People* v. *Campbell*, 59 Cal. 243, 246—de suerte que el hecho de que tanto la comisión del delito como la presentación de la acusación tuvieran lugar antes de las dos fechas últimamente indicadas no daban en forma alguna derecho al fiscal a que se aplicaran exclusivamente los preceptos de ley vigentes antes del 25 de julio en relación con la orden de arresto que interesaba. Los estatutos procesales son aplicables a recursos y casos pendientes, no obstante el hecho de que no dispongan de manera expresa que tendrán efecto retroactivo, siempre desde luego, que no perjudiquen los derechos sustanciales del acusado. *Beazell* v. *Ohio*, 269 U. S. 167, 70 L. ed. 216; *Voorhees* v. *Cox*, 140 F.2d 132; 16 C.J.S. 896, sección 445; Cooley's *Constitutional Limitations*, vol. 2, 8va. ed., pág. 789. El exigir que al presentar la acusación el fiscal demuestre al magistrado la existencia de causa pro-

---

(8) La Ley 22 de 24 de julio de 1952 empezó a regir el mismo día que entró en vigor la Constitución del Estado Libre Asociado de Puerto Rico— 25 de julio de 1952.

bable para que éste expida la orden de arresto, no perjudica tales derechos.

*Habiendo actuado acertadamente el tribunal recurrido al negarse a expedir la orden de arresto solicitada, debe anularse el auto expedido.*

