59 N.J. Super. 64 (1960)
157 A.2d 338
JOHANNE KAUFMANN AND ALFRED KAUFMANN, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
JOSEPH HUSS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1959.
Decided January 14, 1960.
*67 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Nathan Cholodenko argued the cause for appellants.
Mr. William T. McElroy argued the cause for respondent (Messrs. Shaw, Pindar, McElroy, Connell & Foley, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from a Law Division judgment entered upon a unanimous no cause verdict in their action arising out of an automobile accident. Mrs. Kaufmann sued for personal injuries and her husband per quod.
*68 By their amended complaint plaintiffs alleged that they were lawfully invited passengers in defendant's automobile; that he "willfully, wantonly, carelessly and recklessly" operated it so that it ran off the highway and overturned; and that he was negligent in that he operated his car at an excessive rate of speed, failed to make proper observations, disregarded the traffic laws and, generally, failed to exercise that degree of care which a reasonably prudent person would have under the circumstances. The amended answer admitted only operation and, by way of separate defenses, alleged that defendant violated no legal duty owing plaintiffs; defendant was not guilty of any negligence which was the proximate cause of the accident and injuries; plaintiff was guilty of contributory negligence and, finally, that since the accident occurred in South Carolina, the cause of action was governed by the South Carolina guest statute, South Carolina Code of Laws, § 46-801.
Plaintiffs had arranged to fly to Miami, Florida, for a vacation on the evening of Saturday, September 1, 1956. The testimony was that defendant phoned on the Monday preceding that date and suggested that the Kaufmanns accompany him and his wife to Florida in his car. He was told of the plane arrangements, but insisted plaintiffs should come along as company. The Kaufmanns then said they would go only on condition that they pay half the expenses (gasoline, oil, tolls and any necessary repairs) and share the driving. They insisted upon this over defendant's objection, until he finally agreed.
The two couples left for Florida early Saturday morning and stopped for the night at Raleigh, N.C. They continued the next day, Sunday. The accident happened about an hour and a half after lunch Sunday afternoon, near Yemasee, S.C., as defendant was driving south on a two-lane road which ran straight for some five or six miles through a wooded area. An automobile suddenly came out of a dirt road on the right, halted a moment at the margin of the highway, proceeded across it, and stopped momentarily at *69 the center line. Defendant tried to avoid the car by driving to the left, and then went onto the shoulder where the car overturned, coming to rest on its roof. All four occupants got out, and after a state trooper had arrived and checked the accident they drove to a garage where the right rear wheel was changed, and then continued on their way. They arrived in Miami two days later.
All four felt shaken up and somewhat nervous. Mrs. Kaufmann testified she suffered knee and hip bruises, and damage to the frame of her glasses. Afterward, she said, came the pains in the back of her head, neck, shoulders and spine, difficulty with her arms and legs, headaches and dizziness, which required medical attention over a considerable period. Mrs. Kaufmann did not see a doctor in Miami nor upon her return home on September 22. She and her husband made an appointment on October 4 for a checkup, but did not go to see their doctor until October 18, more than six weeks after the accident.
There was variant testimony regarding what happened just before the accident. Mrs. Kaufmann said they were "about 350, 400 feet, 500 feet" away when she first observed the car coming out from the side road, and that defendant was then driving at 90 miles an hour. Her husband gave the same speed, and said that the other car was "approximately 500, 550 feet" away when he first saw it. On cross-examination it appeared that the speed plaintiffs testified to was that at which defendant was traveling shortly after he passed two cars a mile or so north of the point of accident. Defendant's testimony was that he was 60 to 70 feet away when he first saw the other car at the edge of the road, and his speed was 50 to 60 miles an hour. The South Carolina speed limit on this highway was 55 miles an hour.
The proofs show that not only was the stretch of road a straight one, but there was a clear, unobstructed view ahead and little traffic. There was evidence that the other passengers in the car had on Saturday and Sunday morning on a number of occasions urged defendant to slow down. However, *70 the testimony also showed that the warnings were largely motivated by fear of radar traps and that defendant would be arrested for speeding, thereby delaying the trip.
Plaintiffs' first argument on appeal is that the verdict was contrary to the weight of the evidence. We see no merit in the point. Plaintiffs rely solely on defendant's excessive speed as evidence of negligence. The testimony, as detailed above, was contradictory as to just how fast he was driving at the time of the accident. Credibility was of obvious importance, not only as to the details of the accident but also as to the injuries actually suffered. The jury could have found that even though defendant was exceeding the legal speed limit, he was not, immediately prior to the accident, driving faster than a reasonably prudent person would under all the circumstances then present. It could also find that the car which came into defendant's path from the right did so with such little warning that he had no other choice but to try to avoid it by steering to the left.
We are at once confronted by the familiar rule that a jury verdict may not be set aside as against the weight of the evidence unless, giving due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. R.R. 1:5-3(a). A verdict that rests upon testimony competent to sustain the inference implied in its finding is ordinarily conclusive. Hager v. Weber, 7 N.J. 201, 210 (1951). Here we may observe that the trial court denied plaintiffs' motion to set aside the no cause verdict as against the weight of the evidence and because based upon an erroneous charge. Although not under appeal, the denial of the motion is significant in the light of what was said in Hartpence v. Grouleff, 15 N.J. 545, 549 (1954).
Plaintiffs next argue that the court erred in its charge as to the applicability of the South Carolina guest statute, which reads:
*71 "No person transported by an owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such motor vehicle or its owner or operator for injury, death or loss in case of an accident unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others. * * *"
After reading the statute to the jury, the court charged that in the light of the evidence Mrs. Kaufmann was defendant's guest without payment, and so would have no cause of action for damages unless the jury found from the factual circumstances in the case and under the principles of law stated in the charge that the accident was intentional on defendant's part, or was caused by his heedlessness or reckless disregard of plaintiffs' rights. The trial judge then defined the terms used in the statute:
"* * * `Intentional' means willful; an act done by design, not by accident. The words `heedlessness' or `reckless disregard' imply negligence; that is, a failure to observe."
Plaintiffs made no objection to the charge, but defendant did object to the definitions because plaintiffs were thereby relieved of the burden of proving more than simple negligence. The objection was overruled.
The definition in the second sentence of the charge just quoted was erroneous, but clearly in plaintiffs' favor. In Fulghum v. Bleakley, 177 S.C. 286, 289-291, 181 S.E. 30, 31 (Sup. Ct. 1935), the court noted that the South Carolina statute was an exact copy of Connecticut's, and that the Connecticut Supreme Court of Errors had, in Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A.L.R. 943 (1928), defined the phrase "heedlessness or his reckless disregard of the rights of others" as meaning "something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence." The South Carolina court held that it was presumed that the South Carolina Legislature intended such interpretation to form part of the act adopted by it.
*72 The court in Fulghum read the language of section 46-801 of the South Carolina Code, "or caused by his heedlessness or his reckless disregard of the rights of others," as, "or caused by his heedlessness and his reckless disregard of the rights of others." (Italics ours) It adopted the language of the Connecticut court in Bordonaro v. Senk, 109 Conn. 428, 147 A. 136 (Sup. Ct. Err. 1929):
"* * * The liability of the owner or operator of a motor vehicle to his nonpaying guest is limited to two classes, as we state in Silver v. Silver, supra: First, when the accident was caused by the intentional act or conduct of the owner or operator. Intentional as used in this connection connotes the causing of the act or conduct purposely, willfully, or designedly. Second, when the accident was caused by the heedless and reckless disregard of the rights of others by the act or conduct of the owner or operator. Heedless in this connection means careless; it does not add to the significance or the characterization or the force of the act or conduct done in reckless disregard of the rights of others by the owner or operator. Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another. * * *"
Assuming for the moment there was error in the trial court's ruling that the South Carolina guest statute was applicable  and we hold that it was applicable  the alleged error was harmless because the court, despite its reference to the statute, actually imposed upon defendant only the duty of ordinary care. It interpreted the statute as requiring nothing more than a showing of ordinary negligence on his part. The jury was told that heedlessness or reckless disregard implied "negligence; that is, a failure to observe"  contrary to South Carolina law as set out in the Fulghum case. Immediately after so charging the court went on to give the usual charge delivered in a passenger case under our own law, as follows:
"In addition I charge you that under the status of plaintiff Johanne Kaufmann as a passenger in defendant's vehicle, he owed her the duty of exercising reasonable care which would accord *73 plaintiff reasonable safety under the circumstances you find prevailed at the time and place of this happening. So, in this case you should in your deliberations of the evidence consider what degree of care was proportionate and commensurate with reasonable care in the light of all the factual circumstances you find existed in this case.
Upon reaching a conclusion of what degree of reasonable care was required of defendant under those circumstances, you should then determine whether or not defendant's manner of operation and control of the vehicle in this case met such degree of care."
And shortly thereafter the court said:
"In order for the plaintiff to recover against the defendant, the plaintiff has the burden to prove to your satisfaction by the greater weight of the believable evidence that the named defendant was negligent and that such negligence was a proximate cause of the accident. Negligence must be proved. It will not be presumed. In fact, there is a presumption against negligence, and the burden I have just mentioned remains with the plaintiff throughout the whole case. It does not shift as a burden of defendant, because the defendant is never required to prove the lack of negligence.
Negligence, as defined in the law, is a failure to perform or observe some duty which is owed to another or to one's self. That duty calls upon a person having a duty to exercise such degree of care which a reasonably prudent person would have exercised in the place and under the then existing circumstances.
By reasonable care is meant that the conduct be that of a reasonably prudent man. It does not mean what you or I might have done. We might be the overcautious or, on the other hand, the very careless type of person. No. This rule is directed to what a man acting prudently  that is to say, judiciously or wisely cautious in practical affairs at the time and place in question  would have done under similar circumstances."
We find the charge as favorable a one as plaintiffs could ask for in an ordinary case tried under the law of New Jersey. The trial court's continued reference to negligence and its definitions completely negated any reference to the guest statute. Consequently, the alleged error as to the import of the South Carolina statute was not prejudicial.
Under this same point plaintiffs contend that the court worsened the situation when the jury, after conferring for 1 1/2 hours, returned for further instructions. The question put to the trial court by the jury was:
*74 "If the defendant is considered heedless, must he also be found the proximate cause of the accident in order to find in favor of the plaintiff?"
The jury was obviously seeking further instruction on the question of proximate cause, apparently realizing that a mere finding of heedless conduct was not enough. The court, which had previously charged on proximate cause at length, told the jury that the answer to its question was "yes," and then repeated part of its charge on that issue. We find nothing here that might have confused the jury; indeed, it is quite clear to us that it was not confused.
After the jury had again retired the court asked if there were any objections. Defense counsel suggested that it might be well for the court to charge that heedlessness did not mean just plain negligence. Plaintiffs' attorney was entirely satisfied.
The main thrust of plaintiffs' argument is that the guest statute is inapplicable because plaintiffs were sharing travel expenses with defendant, and so it was error for the trial judge to charge that Mrs. Kaufmann was defendant's guest without payment. Apparently the South Carolina courts have not yet had occasion to determine whether the arrangement which existed here constitutes payment within the meaning of the guest statute in question.
Plaintiffs rely upon the North Carolina case of Clodfelter v. Wells, 212 N.C. 823, 195 S.E. 11 (Sup. Ct. 1938), which interpreted the South Carolina statute. In that case the court noted the reference by the South Carolina court in Fulghum v. Bleakley, above, to the Connecticut statute and, after referring to several Connecticut decisions, held that the views espoused therein supported its own conclusion that the facts took Clodfelter out of the status of a "guest without payment." Defendant correctly points out that the facts in Clodfelter are clearly distinguishable from those here present. In Clodfelter, as in some of the cases cited in the comprehensive annotation appearing in 10 A.L.R.2d 1351 (1950), *75 the offer of transportation was made in consideration of the contribution toward the cost of gasoline and oil. The offer would not have been extended but for such contribution. In such cases the payment has been held sufficient to take the case out of the guest statute. Ibid., at page 1354.
In the case before us it is undisputed that defendant did not ask plaintiffs to accompany him and Mrs. Huss so that they might share in his expenses. Indeed, plaintiffs testified that it was only at their insistence that defendant finally agreed they could share expenses. The purpose of the trip was purely social. The applicable rule is set out in the cited annotation:
"The situation which perhaps has caused most difficulty is that where the occupant contributes part or all of the cost of the gasoline and oil, or other expenses, incident to the trip. It appears to be settled that, without more, such contribution will not be held to be payment or compensation, being regarded as merely an incidental gesture of reciprocal hospitality. * * *" (10 A.L.R.2d, at page 1354.)
And see the cases collected at pages 1376 and 1380.
As regards the sharing of the task of driving, the mere fact that a plaintiff assists with the driving, even where such assistance was contemplated from the beginning of the trip, is insufficient to change the plaintiff's status from that of guest to that of passenger. The courts ordinarily regard such assistance as "merely a reciprocal gesture of hospitality or a social amenity, and not as `payment.'" Ibid., at page 1364.
The Clodfelter decision is weakened by the fact that none of the Connecticut cases cited in support of its position, nor the Michigan and North Carolina cases also referred to by the court, involve an expense-sharing arrangement like the one here. Finally, of course, Clodfelter is not binding upon this court: it is an interpretation by a North Carolina court of what the South Carolina Legislature may have intended. We should apply the general rule found in cases involving similar fact situations, annotated in 10 A.L.R.2d, above, *76 and we therefore conclude that plaintiffs were guests "without payment."
In any event, plaintiffs' objection to the charge is not now properly raised. There was no objection to that portion relating to the South Carolina statute, and plaintiffs should not be permitted to raise the question for the first time on appeal. It is entirely clear that plain error is not present.
Plaintiffs' third point is that the court erred in submitting the issue of contributory negligence to the jury, asserting that there was no evidence of negligence on the part of Mrs. Kaufmann. Both plaintiffs testified to seeing the other car emerge from the side road at a time when, according to Mr. Kaufmann, defendant had his eyes off the road. The Huss car was then some distance away. Whether plaintiffs' failure to warn defendant of the other car amounted to negligence was certainly a question for the jury. In Ambrose v. Cyphers, 29 N.J. 138, 150-151 (1959), the court held that a passenger in an automobile is bound to exercise for his own safety the care of a reasonably prudent person under the circumstances. Its reference to Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 176 (1955), where the court spoke of a duty to warn the driver of a "known and appreciated peril," and its comment that such a peril can be said to be "known and appreciated" when the passenger "(1) is aware of the hazard and (2) circumstances indicate to the passenger that the driver is unaware of it," are particularly applicable to this case. The law of South Carolina also imposes duties upon the passenger in an automobile. Brown v. Hill, 228 S.C. 34, 88 S.E.2d 838 (Sup. Ct. 1955).
The only objection to the contributory negligence charge made by plaintiffs' counsel was that "the theory of contributory negligence is not applicable here, because it is an assumption of risk." However, as the Supreme Court recently pointed out in Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44 (1959), assumption of risk in the sense involved in the present case is identical with contributory negligence. *77 Contributory negligence was the proper charge in the circumstances.
Finally, plaintiffs contend that the court erred in submitting the question of imminent peril to the jury. We find no substance to this complaint. It was proper for the court to charge on the subject in view of defendant's testimony that there was presented a situation of sudden and imminent peril not created by his own negligence. And Mr. Kaufmann also testified that the other car started across the southbound lane when defendant's car was quite close, considering the speed of the Huss car.
Furthermore, the charge as given was not deficient. The court made it quite plain that it was not telling the jury that an emergency actually existed, but was simply giving them the law on that point, in case they found there had been such an emergency. And the court correctly said that the rule that the motorist need only use reasonable care in an emergency applies only when it occurs "without any fault on his part."
Affirmed.